### In re ATTORNEY GENERAL OF TEXAS.

### No. 04–05–00752–CV.

Court of Appeals of Texas, San Antonio.

Feb. 22, 2006.

Rhonda Amkraut Pressley, Asst. Atty. Gen., Austin, for appellant.

Barbara Hutzler, Hutzler & Han, L.L.P., Daisy Selvera, San Antonio, for appellee.

Michael D. Robbins, Asst. Public Defender, San Antonio, for ad litem.

Sitting: KAREN ANGELINI, Justice, SANDEE BRYAN MARION, Justice, REBECCA SIMMONS, Justice.

## OPINION

Opinion by SANDEE BRYAN MARION, Justice.

In this mandamus proceeding, the Attorney General of Texas complains of the trial court's granting a new trial and ordering genetic testing in the underlying suit affecting parent-child relationship. The Attorney General contends that Marco J. DeJong, Jr., who signed and filed an acknowledgment of paternity, is time-barred from challenging his paternity under the Texas Family Code. We conclude the trial court had jurisdiction to grant a new trial, and therefore, deny mandamus relief as to the order granting new trial. We also conclude the trial court abused its discretion in ordering genetic testing and that an appeal from that order is an inadequate remedy. We, therefore, grant mandamus relief as to the genetic testing order.

## BACKGROUND

Following a sexual relationship with De-Jong, Daisy Selvera gave birth to a child,

D.A.D. The day after D.A.D.'s birth, De-Jong and Selvera signed an acknowledgment of paternity, declaring that they were D.A.D.'s biological parents. DeJong and Selvera were both adults when they signed the acknowledgment of paternity, which was filed with the bureau of vital statistics on January 4, 2001. Under the Texas Family Code, a valid acknowledgment of paternity filed with the bureau of vital statistics is the equivalent of an adjudication of paternity. See TEX. FAM.CODE ANN. § 160.305(a) (Vernon 2002). Despite suspicions that he was not D.A.D.'s biological father,[2] DeJong failed to institute a timely proceeding to challenge his legal status as D.A.D.'s father.[3]

Subsequently, Selvera sought the assistance of the Texas Attorney General in establishing child support for D.A.D., and the Attorney General filed a suit affecting parent-child relationship in March 2005. The Attorney General's petition alleged that DeJong was the child's father pursuant to an acknowledgment of paternity. In response to the suit, DeJong filed an answer consisting solely of a general denial. The suit proceeded before an associate judge, who refused DeJong's oral request for genetic testing. On August 16, 2005, the associate judge signed an order establishing conservatorship, visitation, child support, and medical support for D.A.D. The order includes a finding that DeJong

---

**2.** In December of 2003, DeJong submitted samples from D.A.D. and himself to a laboratory for genetic testing. DeJong claims this testing shows he could not be D.A.D.'s biological father. The results of this genetic test, performed without Selvera's consent or a court order, are not admissible. See TEX. FAM. CODE ANN. § 160.621(c) (Vernon 2002).

**3.** A signatory to an acknowledgment of paternity may commence a proceeding to challenge the acknowledgment based on fraud, duress, or material mistake of fact; however, the proceeding must be filed on or before the fourth anniversary of the date the acknowledgment is filed with the bureau of vital statistics. See TEX. FAM.CODE ANN. § 160.308(a), (c) (Vernon Supp.2005). Thus, DeJong was required to file a proceeding to challenge the acknowledgment on or before January 4, 2005.

is D.A.D's father and has a duty of support. When DeJong did not appeal the associate judge's order it became the order of the trial court by operation of law. *See* TEX. FAM.CODE ANN. § 201.1041(a) (Vernon Supp.2005).

DeJong timely filed a motion for new trial. This motion raised constitutional issues about the acknowledgment of paternity statute and argued that DeJong "never executed an Acknowledgment of Paternity which meets the requirements of § 160.302," the current statute authorizing acknowledgments of paternity. In other words, DeJong maintained that his acknowledgment of paternity had no legal effect because it did not include information required by the current acknowledgment of paternity statute.[4] DeJong also claimed that the evidence was legally and factually insufficient to support a finding that he is D.A.D.'s legal father because the acknowledgment was not offered into evidence at the final hearing.[5] DeJong's motion for new trial was heard by a district court judge who granted a new trial "in the interest of justice and fairness" as to the "issue of paternity only" and denied DeJong's motion "in all other respects."

After the court granted the new trial, DeJong filed a motion asking the court to order genetic testing in aid of determining parentage. DeJong also filed a first amended answer and a countersuit in the same cause number. For the first time, DeJong pleaded "affirmative defenses," including that (1) he is not D.A.D.'s father; (2) his acknowledgment of paternity is not "valid" because the instrument he signed did not satisfy the new statutory requirements; (3) the acknowledgment was executed on the basis of fraud, duress, or material mistake of fact, and genetic testing had established he is not the father of the child; (4) Selvera committed perjury in signing the acknowledgment of paternity; and (5) the acknowledgment constituted a waiver of his state and federal due process rights. DeJong's countersuit reiterated his "affirmative defenses" and broadly attacked the constitutionality of the four-year statutory bar to challenging an acknowledgment of paternity.

On October 18, 2005, the day after DeJong filed his countersuit, the trial court held a hearing on DeJong's motion for genetic testing. In opposing this motion, the Attorney General argued the trial court did not have the authority to order genetic testing because DeJong was D.A.D.'s legal father and had failed to challenge his acknowledgment of paternity in a timely fashion. Notwithstanding these arguments, the district court ordered D.A.D., DeJong, and Selvera *to submit* samples for genetic testing, and ordered a laboratory to report its results in compliance with Texas Family Code section 160.504.

The Attorney General filed the instant petition for a writ of mandamus in which it asserts the trial court's order granting a new trial and genetic testing order are void. The Attorney General also requested a stay of the genetic testing order. We

---

4. In 2001, the Texas Family Code was amended to require that acknowledgments of paternity include additional information. Generally, this information consists of a statement about the child's presumed father, if any; a statement that the child has no acknowledged or adjudicated father; a statement about the existence of genetic testing; and a statement that the signatories understand that the acknowledgment is the equivalent of a judicial adjudication of paternity and a challenge, while permitted under limited circumstances, is barred after four years. *See* TEX. FAM.CODE ANN. § 160.302(a) (Vernon 2002).

5. A certified copy of the acknowledgment was admitted into evidence at a subsequent hearing and is part of the mandamus record.

stayed the genetic testing order and requested a response to the petition, and ultimately heard oral arguments.

## STANDARD OF REVIEW

 We may issue a writ of mandamus only to correct a clear abuse of discretion or a violation of a duty imposed by law when there is no other adequate remedy at law. *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992) (orig.proceeding). A clear failure to analyze or apply the law correctly constitutes an abuse of discretion. *Id.* at 840. A party does not have an adequate remedy by appeal when the appellate court would not be able to cure the trial court's discovery error. *In re Colonial Pipeline, Co.*, 968 S.W.2d 938, 942–43 (Tex.1998) (orig.proceeding); *Walker*, 827 S.W.2d at 843. An appellate court cannot cure a trial court's error when a discovery order imposes a burden on a producing party far out of proportion to any benefit that may obtain to the requesting party. *Walker*, 827 S.W.2d at 843.

## APPLICABLE LAW

In Texas, the father-child relationship may be established in one of five ways: (1) an unrebutted presumption of the man's paternity of the child; (2) an effective acknowledgment of paternity by the man unless it has been rescinded or successfully challenged; (3) an adjudication of a man's paternity; (4) the adoption of the child by the man; or (5) the man's consenting to assisted reproduction by his wife, resulting in the birth of a child. *See* TEX. FAM.CODE ANN. § 160.201(b) (Vernon 2002).

"[A] valid acknowledgment of paternity filed with the bureau of vital statistics is the equivalent of an adjudication of the paternity of a child and confers on the acknowledged father all rights and duties of a parent." *Id.* § 160.305(a). An acknowledgment of paternity takes effect on the date of the birth of the child or the filing of the document with the bureau of vital statistics, whichever is later. *Id.* § 160.304(c). For a short time after the acknowledgment's effective date—usually sixty days—a signatory to an acknowledgment of paternity may rescind it by commencing a proceeding to rescind. *Id.* § 160.307. Thereafter, a signatory to an acknowledgment may commence a proceeding to challenge the acknowledgment only on the basis of fraud, duress, or material mistake of fact. *Id.* § 160.308(a) (Vernon Supp.2005). A proceeding to challenge the acknowledgment "must be commenced before the fourth anniversary of the date the acknowledgment ... is filed with the bureau of vital statistics unless the signatory was a minor on the date the signatory executed the acknowledgment ..." *Id.*[6] "Notwithstanding any other provision of this chapter, a collateral attack on the acknowledgment of paternity signed under this chapter may not be maintained after the fourth anniversary of the date the acknowledgment of paternity is filed with the bureau of vital statistics unless the signatory was a minor on the date the signatory executed the acknowledgment." *Id.* § 160.308(c).

## NEW TRIAL ORDER

 The Attorney General argues the new trial order is "void" because the trial court may no longer consider a challenge

---

**6.** We note that the acknowledgment of paternity statute is consistent with the well-established policy goal of finality in matters concerning the parentage of minor children. While it may sometimes lead to imperfect results, the goal of finality is particularly compelling in matters concerning minor children. *In re T.S.S.*, 61 S.W.3d 481, 485 (Tex.App.-San Antonio 2001, pet. denied).

to the acknowledgment of paternity based on the statute's requirement that any such proceeding be filed no later than four years after its effective date. A trial court has broad discretion to grant a new trial in the interest of justice. *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 918 (Tex.1985). There are only two instances in which a Texas appellate court has overturned a trial court's grant of a new trial: (1) when the trial court's order was wholly void, such as when it was rendered after its plenary power expired; and (2) when the trial court granted a new trial on the sole ground that the jury's answers to special issues were conflicting. *Id.; Stolhandske v. Stern,* 14 S.W.3d 810, 815–16 (Tex.App.-Houston [1st Dist.] 2000, orig. proceeding). Neither situation is present here. The new trial order is not void because it was signed while the trial court retained plenary jurisdiction. We, therefore, deny mandamus relief as to the order granting new trial.

### GENETIC TESTING ORDER

■ We next consider if the trial court abused its discretion in ordering genetic testing before DeJong has shown that he can set aside his acknowledgment of paternity.[7]

■ Mandamus may issue to correct a discovery error when it constitutes a clear abuse of discretion and the aggrieved party has no adequate remedy by appeal. *Tilton v. Marshall,* 925 S.W.2d 672, 682–83 (Tex.1996) (citing *Walker,* 827 S.W.2d at 843). A trial court abuses its discretion when a child's paternity has been legally established and it orders genetic testing before such a parentage determination has

been set aside. *Amanda v. Montgomery,* 877 S.W.2d 482, 487 (Tex.App.-Houston [1st Dist.] 1994, orig. proceeding). In *Amanda,* a father filed a petition for a bill of review to nullify a finding in a divorce decree that he was the child's father. The trial court ordered paternity testing before the father established the preliminary requisites for a bill of review. The appellate court held that the paternity testing order constituted improper discovery and issued a writ of mandamus to vacate the paternity testing order. In reaching this conclusion, the *Amanda* court cited *Spears v. Haas,* 718 S.W.2d 756, 758 (Tex.App.-Corpus Christi 1986, orig. proceeding), a case in which the trial court properly delayed paternity testing until after the requesting party established the requisites for a bill of review. In *Spears,* the appellate court reasoned:

> While we believe, as a general rule, discovery is appropriate prior to the pretrial hearing at which the petitioner must prove his prima facie case for bill of review. However, we do not believe that the general rule encompasses serology testing to determine paternity until *after* the prima facie case has been established. The serological testing would not in any manner aid relator in establishing the elements necessary to show the prima facie grounds of fraud, accident, wrongful act of opposing party, or official mistake.

*Id.* (emphasis in original).

The instant case is analogous to *Amanda.* Here, the trial court ordered genetic testing in the face of a legally established parent-child relationship. Much like the petitioner in a bill of review proceeding,

---

**7.** DeJong contends the Attorney General lacks standing to complain of the genetic testing order. We disagree. The Attorney General has standing in suits affecting the parent-child relationship. *See* TEX. FAM.CODE ANN. § 102.003(5) (Vernon Supp.2005); §§ 102.007; 231.101(a) (Vernon 2002); *see also Attorney General v. Lavan,* 833 S.W.2d 952, 954–55 (Tex.1992).

DeJong has significant hurdles to overcome before his legal status as D.A.D.'s father can be set aside. All parties agree that DeJong's challenge to the acknowledgment of paternity is untimely, and the statute expressly forbids even a collateral attack to the acknowledgment of paternity at this juncture. *See* TEX. FAM.CODE ANN. § 160.308(c) (Vernon Supp.2005). Therefore, as a threshold matter, DeJong must either establish his acknowledgment is not "valid" under the current version of section 160.302[8] or show he can sustain his untimely challenge, presumably by proving the acknowledgment of paternity statute to be unconstitutional.

DeJong maintains he is entitled to paternity testing because he has pleadings before the court seeking a paternity determination. At oral argument, DeJong's counsel suggested the genetic testing order is justified by his fraud and his mistake of fact claims. We disagree. Even DeJong's pleadings underscore that he must initially set aside his acknowledgment of paternity. The prayer in DeJong's countersuit first seeks an order "rescinding" or "vacating" the acknowledgment and deleting his acknowledgment from the public records, then seeks genetic testing and an adjudication of paternity. Because genetic testing in no way advances DeJong's threshold arguments about the validity of his acknowledgment or the constitutionality of the statute, genetic testing is irrelevant at this phase of the proceeding. Therefore, the trial court erred in ordering genetic testing.

██ The final step in our analysis is to evaluate if there is an adequate remedy, such as by appeal, to correct the trial court's error. Mandamus relief is justified when a discovery order compels production of patently irrelevant or duplicative documents, such that it imposes a burden on the producing party far out of proportion to any benefit gained by the requesting party. *Tilton*, 925 S.W.2d at 682–83. The burden may derive from the fact that the discovery ordered is not only irrelevant, but also highly sensitive and personal. *Id.* (granting mandamus relief to halt discovery of a litigant's tithing records). A party does not have an adequate remedy by appeal when the appellate court would not be able to cure the trial court's discovery error. *Walker*, 827 S.W.2d at 843.

The Attorney General asserts its appellate remedy is inadequate because genetic testing may cause permanent, irreversible harm to D.A.D. The Attorney General emphasizes that D.A.D. has bonded with DeJong and points to reports that D.A.D. sleeps with DeJong's picture under her pillow. DeJong counters that genetic testing, and the truth it will reveal about whether DeJong is D.A.D.'s biological father, will provide long-term emotional benefits to the child.

We agree with the Attorney General. D.A.D. is currently five years old, and DeJong has been her legal father for virtually all of her life. At this stage, genetic testing results are highly sensitive, and the burden of irrelevant and unnecessary genetic testing far outweighs any possible benefit to DeJong. "The production of unauthorized discovery, once ordered, cannot be undone." *Amanda*, 877 S.W.2d at 487. As such, an appeal does not provide an adequate remedy for the trial court's error. We, therefore, direct the Honor-

8. The gist of DeJong's "validity" argument is that his acknowledgment has no legal effect because it does not include all of the information required under the current acknowledgment of paternity statute. *See* TEX. FAM.CODE ANN. § 160.302(a) (Vernon 2002). DeJong agrees his acknowledgment of paternity met all statutory requirements at the time it was signed and filed with the bureau of vital statistics.

able Judge Berchelmann to vacate the genetic testing order. We are confident that he will withdraw the order within ten days from the date of this opinion. The writ will issue only if he does not do so.