**In re Sanjuana RODRIGUEZ and the Office of the Attorney General of Texas, Relators.**

**No. 05–07–01755–CV.**

Court of Appeals of Texas, Dallas.

March 12, 2008.

John B. Worley, Austin, Bill Barragan, G.R. Barragan and Associates, Richardson, TX, for Relator.

Kathy Ehmann–Clardy, Law Offices of Manuel E. Solis, Dallas, TX, for Real Party In Interest.

Before Justices WRIGHT, O'NEILL, and LANG.

## OPINION

Opinion by Justice LANG.

This mandamus case arises in the context of a divorce proceeding. Real party in interest, Pedro Rodriguez, claimed he was not the father of two children born during his marriage to Sanjuana Rodriguez. His request for genetic testing in support of his denial of parentage was granted. We must decide whether the trial judge abused his discretion in ordering genetic testing of two minor children born during the marriage of the parties at a time after the expiration of the four-year statute of limitations for such testing. *See* TEX. FAM.CODE ANN. § 160.607 (Vernon Supp.2007). Because we decide the trial judge abused his discretion and there is no adequate remedy by appeal, we conditionally grant a writ of mandamus.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On July 30, 2007, the Attorney General of Texas filed a child support action in the interest of the children of S. Rodriguez and P. Rodriguez in the 255th Judicial District Court of Dallas County, Texas. On September 24, 2007, S. Rodriguez filed her petition for divorce in the 254th Judicial District Court. The two proceedings were consolidated in the 254th Judicial District Court on October 15, 2007.

In his October 3, 2007 original answer to S. Rodriguez's divorce petition, P. Rodriguez alleged that "[h]e did not live or engage in sexual relations with Sanjuana Rodriguez during the probable period of conception and never represented to others that the child was his own." In the counter-petition for divorce filed on October 3, 2007, P. Rodriguez denied that he is the father of the children born November 12, 2000 and November 7, 2002, requested an order for genetic testing respecting these two children based on chapter 160 of the Texas Family Code, and stated "he has reason to believe" he is not the father of these two children because another man has claimed he fathered them. Also, P. Rodriguez asserted in the counter-petition for divorce that the "parties were married on or about March 17,1999 and ceased to live together as husband and wife on or about May 4, 2005." All parties acknowledged the minor children were born during the marriage of S. Rodriguez and P. Rodriguez. Both children were over four years old when these proceedings commenced.

On August 30, 2007, an associate judge ordered genetic testing in the child support action, but did not set a date by which the testing must be done. Rather, the associate judge's order indicated testing was "TO BE SCHEDULED." On September 24, 2007, the Attorney General appealed the order to the district judge. The district judge denied the Attorney General's appeal of the associate judge's order for parentage testing on December 10, 2007.

Relators S. Rodriguez and the Attorney General filed this petition for a writ of mandamus and a motion for emergency stay on December 27, 2007. The certificates of service in the motion and the petition reflect they were served by sending copies in the mail on December 21, 2007 to P. Rodriguez and the district court. In the petition filed in this Court, relators initially request this Court vacate the affirmed August 30, 2007 associate judge's paternity testing order. Relators contend no genetic testing should be done on the children because P. Rodriguez is the presumed father and is barred from bringing a proceeding to determine parentage by the four-year statute of limitations in section 160.607(a) of the Texas Family Code. Relators also contend genetic testing is irrelevant at this stage of the proceeding because P. Rodriguez has not overcome the limitation that bars "disestablishment of his presumed paternity."

By this Court's order of December 28, 2007, we denied relators' motion for temporary stay concluding there was no immediate threat of irreparable harm because the associate judge's order did not set a date by which the testing must be done. On January 10, 2008, P. Rodriguez filed a motion for extension of time to file his brief in response beyond January 11, 2008, the time set for response by this Court. On the same day, relators filed an objection to P. Rodriguez's motion for an extension and sought reconsideration of the Court's denial of their motion for a stay. All of these filings contain a certificate of service signed by counsel for relators or P. Rodriguez stating they were served by mail sent on January 10, 2008 to the district judge and opposing counsel. By this Court's order dated January 11, 2008, we denied, without prejudice, relators' motion for reconsideration of the Court's denial of their motion for stay and we extended the time for filing P. Rodriguez's response. Both the December 28 and January 11 orders were served by the Clerk of this Court by regular mail on those dates on all parties and the district judge.

According to the record, on January 14, 2008, the associate judge signed another

order that genetic testing of P. Rodriguez and the two minor children proceed within five days of the order. That same day, relators appealed this second order to the district judge. A de novo hearing was conducted by the district judge on the morning of January 15, 2008. At the hearing, the district judge not only affirmed the associate judge's second order for genetic testing, but issued his own order reducing the time frame for testing from five days to an order that genetic testing take place *instanter*, by noon, that very day, on January 15, 2008. At the time of the *instanter* order from the district judge, this mandamus proceeding had been pending in this Court for nineteen days and the parties certified they had sent copies of no fewer than four separate pleadings or motions to the district court by that time.

On the afternoon of January 15, 2008, relators filed another motion for emergency stay. Relators also filed a supplement to the petition for writ of mandamus asking this Court to vacate both the associate judge's second order and the district judge's *instanter* order for paternity testing. This Court issued an order on the afternoon of January 15, 2008 staying all activity regarding the taking, analysis, and processing of the samples and any preparation of a parentage report regarding the genetic testing. Our order of stay was sent by facsimile to counsel for relators and P. Rodriguez on January 15, 2008 at approximately 5:15 p.m., immediately after it was written and signed. This order of stay was sent by facsimile to the district court at 9:04 a.m. and the genetic testing facility at 9:47 a.m. on January 16, 2008. This stay remains in effect.

On January 17, 2008, P. Rodriguez filed a response to the petition for writ of mandamus. In that response, P. Rodriguez asserts the four-year limitation on a proceeding seeking to test paternity has been tolled by S. Rodriguez's alleged fraud. P. Rodriguez contends S. Rodriguez misrepresented his parentage of the children and asserts: "Fraudulent misrepresentation regarding the paternity of the children should toll the four-year statute of limitations to request parentage testing during the marriage like the statute of limitations to assert an action to enforce a premarital agreement is tolled during the marriage," citing Texas Family Code section 4.008. In urging this Court to allow genetic testing "in the best interests of the children," P. Rodriguez cites as his legal authorities "paternity fraud laws" of other states; Texas Family Code section 160.308(a) (Vernon 2005) (provision for rescinding written acknowledgment or denial of paternity); and provisions of chapter 162 of the Texas Family Code which require a "genetic history report" for adopted children.

On January 18, 2008, relators filed a second supplement to the petition for writ of mandamus requesting that this Court permanently halt the processing and analysis of the genetic testing ordered in this case; order immediate destruction of the samples taken for genetic testing; order destruction of any record of the results of testing; prohibit disclosure of any testing results to any person; and order counsel for the parties and the parents in this case not to disclose the testing results, if they learn of them, to any other person, including the children. On January 25, 2008, relators filed a motion advising this Court that in violation of this Court's January 15, 2008 order of stay, the genetic testing facility designated in the district court's order had processed the samples and issued reports to the parties and the district court. Also, relators requested we seal the results of the genetic testing and prohibit their disclosure to the children. In response, this Court issued an order on January 25, 2008 directing the district

court, the parties, and the testing facility to seal all copies of the reports and file them with this Court.

In apparent response to our January 25, 2008 order, some of the reports were received at this Court without seal and others were filed in a sealed envelope. The district court's transmission of the reports to this Court was by letter delivered to the Clerk of this Court on January 30, 2008, along with copies of the paternity reports. Neither the district court's letter nor the paternity reports were sealed or enclosed in an envelope. Pursuant to this Court's order of January 31, 2008, the reports received from the parties, the testing facility, and the district court are held in a sealed envelope.

## II. STANDARD OF REVIEW

■ Mandamus relief is available when the trial court abuses its discretion or violates a legal duty and there is no adequate remedy at law, such as by appeal. *In re Dana Corp.*, 138 S.W.3d 298, 301 (Tex.2004) (orig.proceeding) (per curiam) (citing *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992) (orig.proceeding)); *In re Tex. Am. Express, Inc.*, 190 S.W.3d 720, 723 (Tex.App.-Dallas 2005, orig. proceeding) (per curiam). "In determining whether appeal is an adequate remedy, appellate courts consider whether the benefits outweigh the detriments of mandamus review." *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex.2004).

### A. Abuse of Discretion

■ A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex.2005) (orig.proceeding); *In re Tex. Am. Express*, 190 S.W.3d

at 723. In determining whether the trial court abused its discretion in the resolution of factual matters, the court of appeals may not substitute its judgment for that of the trial court and may not disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *Walker*, 827 S.W.2d at 839–40; *In re Tex. Am. Express*, 190 S.W.3d at 724. "A trial court has no 'discretion' in determining what the law is or applying the law to the facts. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ." *Walker*, 827 S.W.2d at 840; *In re Tex. Am. Express*, 190 S.W.3d at 724.

### B. No Adequate Remedy by Appeal

■ The second requirement for mandamus relief, that the petitioner has no adequate remedy by appeal, "has no comprehensive definition." *See In re Ford Motor Co.*, 165 S.W.3d 315, 317 (Tex.2005) (orig.proceeding) (citing *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004) (orig.proceeding)); *In re Tex. Am. Express*, 190 S.W.3d at 724. Determining whether a party has an adequate remedy by appeal requires a "careful balance of jurisprudential considerations" that "implicate both public and private interests." *See In re Ford Motor Co.*, 165 S.W.3d at 317; *In re Tex. Am. Express*, 190 S.W.3d at 724. "When the benefits [of mandamus review] outweigh the detriments, appellate courts must consider whether the appellate remedy is adequate." *In re Ford Motor Co.*, 165 S.W.3d at 317; *In re Tex. Am. Express*, 190 S.W.3d at 724. An appeal is inadequate when the parties are in danger of permanently losing substantial rights. *In re Van Waters & Rogers, Inc.*, 145 S.W.3d 203, 211 (Tex.2004) (orig.proceeding); *In re Tex. Am. Express*, 190

S.W.3d at 724. Such a danger arises when the appellate court would not be able to cure the error, the party's ability to present a viable claim or defense is vitiated, or the error cannot be made part of the appellate record. *In re Van Waters*, 145 S.W.3d at 211; *In re Tex. Am. Express*, 190 S.W.3d at 724.

## III. PRESUMPTION OF PATERNITY AND ADJUDICATION OF PARENTAGE

Relators argue the district judge abused his discretion by denying the appeal from the associate judge's orders for genetic testing and by issuing an *instanter* order for genetic testing because P. Rodriguez is barred by limitations from challenging parentage of these children. Furthermore, relators contend there is no adequate remedy by appeal from the orders that genetic testing be conducted. P. Rodriguez argues in response that he has presented evidence of an exception to the statute of limitations and that the genetic testing is necessary because of relator S. Rodriguez's alleged fraud regarding paternity.

### A. Legal Authorities

There exists a presumption of paternity if a man is married to the mother of the child and the child is born during the marriage. TEX. FAM.CODE ANN. § 160.204(a) (Vernon Supp.2007). This presumption legally establishes the father-child relationship between the man and child. TEX. FAM.CODE ANN. § 160.201(b)(1) (Vernon 2006). A "presumed father" is, by operation of law under section 160.204, "recognized as the father of the child until that status is rebutted or confirmed in a

judicial proceeding." TEX. FAM.CODE ANN. § 160.102(13) (Vernon Supp.2007); *In re S.C.L.*, 175 S.W.3d 555, 557 (Tex.App.-Dallas 2005, no pet.). This presumption may be rebutted only by (1) a proceeding to adjudicate parentage under Subchapter G, or (2) the filing of a valid denial of paternity by the presumed father in conjunction with the filing by another person of a valid acknowledgment of paternity. TEX. FAM. CODE ANN. § 160.204(b) (Vernon Supp. 2007); *In re S.C.L.*, 175 S.W.3d at 557. When a child has a presumed father, the general rule is that a proceeding to adjudicate parentage must be commenced "not later than the fourth anniversary of the date of the birth of the child." TEX. FAM. CODE ANN. § 160.607(a). However, a proceeding seeking to disprove the father-child relationship between a child and the child's presumed father may be maintained at any time if the court determines that:

> (1) the presumed father and the mother of the child did not live together or engage in sexual intercourse with each other during the probable time of conception; and
>
> (2) the presumed father never represented to others that the child was his own.

TEX. FAM.CODE ANN. § 160.607(b).

■■■■ When a party to a proceeding to determine parentage makes a request, the trial court shall order genetic testing of the child and other designated individuals, "[e]xcept as otherwise provided by this subchapter and Subchapter G."[1] TEX. FAM. CODE ANN. § 160.502 (Vernon 2006). Therefore, a party must be entitled to maintain a proceeding to adjudicate parentage as set out in Subchapter G before a trial court can order genetic testing to

---

1. The Texas Family Code provides, "Except as otherwise provided by this subchapter and by Subchapter G, a court shall order a child and other designated individuals to submit to genetic testing if the request is made by a party to a proceeding to determine parentage." TEX. FAM.CODE ANN. § 160.502(a).

determine parentage. *See* TEX. FAM.CODE ANN. §§ 160.502(a), 160.607. A trial court cannot grant an order for genetic testing when requested by an individual who has not made a prima facie showing that he is entitled to bring a proceeding to adjudicate parentage or disprove the father-child relationship. *See* TEX. FAM.CODE ANN. §§ 160.502(a), 160.607; *Amanda v. Montgomery,* 877 S.W.2d 482, 486–87 (Tex.App.-Houston [1st Dist.] 1994, orig. proceeding) (granting mandamus relief from an order for genetic testing requested by a presumed father who had failed to make a prima facie showing that his bill of review challenging paternity was not barred as a matter of law). Since the limitation on proceedings to adjudicate parentage for a child with a presumed father is contained in Subchapter G "Proceeding to Adjudicate Parentage," a court cannot order genetic testing if the proceeding to adjudicate parentage is barred as a matter of law by the four-year limitations period and the party requesting the testing produces no evidence of the exception found in section 160.607(b). TEX. FAM.CODE ANN. §§ 160.502(a), 160.601–637 (Vernon 2006 & Supp.2007) ("Subchapter G"). The party seeking to avoid the limitation bears the burden of proving a provision that would toll the statute of limitations. *See In re S.C.L.,* 175 S.W.3d at 558 n. 1 (noting alleged father whose petition to adjudicate paternity was barred by four-year limitation in section 160.607 did not contend that either of the tolling conditions of section 160.607(b) were met); *see also Woods v. William M. Mercer, Inc.,* 769 S.W.2d 515, 518 (Tex.1988) (party seeking to avoid a statute of limitations bears the burden of proving a tolling provision once the initial bar is established as a matter of law); *Weaver v. Witt,* 561 S.W.2d 792, 794 n. 2 (Tex.1977) ("In a conventional trial on the merits, proof of facts suspending the oper-

ation of a statute of limitations is the burden of the party pleading suspension.").

■■■ "A trial court abuses its discretion when a child's paternity has been legally established and it orders genetic testing before a parentage determination has been set aside." *In re Attorney General,* 195 S.W.3d 264, 269 (Tex.App.-San Antonio 2006, orig. proceeding) (concluding trial judge abused his discretion in ordering genetic testing "in the face of a legally established parent-child relationship" when father did not introduce evidence to overcome his legal status as father) (citing *Amanda,* 877 S.W.2d at 487).

### B. The Orders for Genetic Testing

■■■ It is undisputed that the children for whom genetic testing was ordered were born during the marriage of P. Rodriguez and S. Rodriguez. Thus, P. Rodriguez is the presumed father of the children. *See* TEX. FAM.CODE ANN. § 160.204(a)(1). Any proceeding to adjudicate parentage in this case is subject to the four-year time limitation set forth in section 160.607 of the Texas Family Code. *See* TEX. FAM.CODE ANN. § 160.607(a). The children were both over four years old when the child support and divorce proceedings were commenced. On this record, P. Rodriguez is barred from bringing a proceeding to adjudicate the parentage of the children unless he met his burden to present evidence of an exception to the four-year period of limitations in section 160.607. *See* TEX. FAM.CODE ANN. § 160.607(a), (b).

To bring a proceeding to disprove the father-child relationship under section 160.607(b), P. Rodriguez must prove that (1) he and S. Rodriguez did not live together or engage in sexual intercourse with each other during the probable time of conception and (2) he "never" represented to others that the child was his own. *See*

Tex. Fam.Code Ann. § 160.607(b). Both in the district court and in this original proceeding, P. Rodriguez does not address his burden under section 160.607(b), but asserts only that S. Rodriguez's alleged fraud regarding paternity tolls the statute of limitations. In his response, P. Rodriguez argues a challenge to paternity should be allowed without limitation when genetic testing would exclude a man as the biological father of the child. In support of that contention, he cites us to the law of some other states, and says "the fraudulent concealment of a child's true father harms the child as well as the father." P. Rodriguez also cites provisions of the Texas Family Code in support of his argument that such a challenge should be allowed without limitation. However, the authorities cited by P. Rodriguez are inapposite.

The establishment of paternity is a matter of legislative policy. *See Michael H. v. Gerald D.*, 491 U.S. 110, 129–30, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989); *In re S.C.L.*, 175 S.W.3d at 558. The Texas Legislature, in passing section 160.607, determined the policy in this State is to generally limit challenges to legally established paternity to four years after the birth of the child, other than the specifically identified exception. *See* Tex. Fam.Code Ann. § 160.607. The legislature expressly identified, in plain language, when and under what circumstances genetic testing of children born during a marriage may be conducted. *See* Tex. Fam.Code Ann. §§ 160.502, 160.607; *In re Tex. Dep't of Family & Protective Servs.*, 210 S.W.3d 609, 612 (Tex.2006) ("In construing a statute, ... [t]o determine the Legislature's intent, we look to the statute's plain language and the common meaning of the statute's words."). The laws of other states cited by P. Rodriguez have no application here in the face of Texas statutes speaking directly to the issue before the trial and appellate courts. Likewise, Tex-

as Family Code section 160.308, offered as authority by P. Rodriguez, does not address the facts of this case. That section provides for a means of rescinding a written acknowledgment or denial of parentage. The last authority offered by P. Rodriguez, Texas Family Code section 162.005, provides for a report to be compiled respecting, among other things, a genetic history, before placing a child for adoption. That provision has no application on this record.

The record in the district court reveals P. Rodriguez presented no evidence to support either the requirements of section 160.607(b) or his assertion of alleged fraud. In fact, the record shows he presented no evidence at all. Although relators argued P. Rodriguez was required to present evidence to meet his burden and demonstrate he was not barred from proceeding, the district judge ordered testing. The district judge concluded in his oral pronouncement:

> "The Court's position is that the truth does not know a statute of limitations. The Attorney General has not shown any reason that the children should not be tested. It is clearly in the children's best interest to know who their father is. It is clearly in the State's best interest to know who the father is so the correct person can be paying child support. Appeal denied. Testing ordered immediately."

Although the district judge's position is that there should be no statute of limitations on the truth and that it is in the best interests of the children to know who their father is, such determinations are a matter for the legislature, not the trial court. A trial court has no discretion in determining what the law is, nor does it have discretion in applying the law to the facts. *See Walker*, 827 S.W.2d at 840. The legisla-

ture has determined that absent certain exceptions, a four-year statute of limitations does apply in cases such as the one before us.

▮▮▮ It is clear the district judge abused his discretion by incorrectly placing the burden on "the Attorney General" to show that the children should not be tested. The clear language of the applicable section of the Texas Family Code, section 160.607, places the burden on P. Rodriguez to present evidence of an exception to the four-year limitation on a proceeding to determine parentage. *See* TEX. FAM. CODE ANN. § 160.607(b). Accordingly, on this record, which reveals P. Rodriguez presented no evidence at all, P. Rodriguez has not carried his burden of proof to make a prima facie case supporting an exception to the statute of limitations. *See In re S.C.L.,* 175 S.W.3d at 558 n. 1; *Weaver,* 561 S.W.2d at 794 n. 2. We conclude, on this record, the ordering of genetic testing constitutes a clear abuse of discretion.

An additional facet of the district judge's order must be addressed respecting abuse of discretion. We express grave concern regarding the district judge's timing when he ordered the genetic testing to be done "immediately," pursuant to the extraordinary *instanter* order. This order was issued on the morning of January 15, 2008 and required the children be picked up from school and taken for genetic testing before noon that very day. The hearing in which the order was issued was an appeal from the associate judge's order of the previous day requiring genetic testing. That order required testing within five days. Nevertheless, the district judge denied the appeal of the associate judge's order and, as if some emergency had been demonstrated in the record, imposed the onerous burden of effecting the testing that very day, within a few hours from the

time of the hearing. Also, the *instanter* order cautioned "that refusal to submit to testing as ordered above may result in a finding of contempt." Nothing in the record before us shows any need for testing to be performed immediately.

On the afternoon of January 15, 2008, relators presented to us a motion for emergency stay of the *instanter* order which stated in part:

[T]his new order has such a short deadline that it is virtually certain to render this mandamus proceeding moot unless this Court issues an order staying it. The district court thus also abused its discretion by signing orders that clearly appear to be designed to deprive this Court of its jurisdiction.

Premised on those concerns, we ordered a stay immediately upon receiving that motion from relators.

▮▮▮ The absence of any evidence in the record of an emergency leaves unsupported the order for genetic testing on a precipitous *instanter* basis in the context of the case pending in the district court. Based on the record before us, the issuance of the emergency *instanter* order under these circumstances was arbitrary and unreasonable. *See Walker,* 827 S.W.2d at 839–40 (quoting *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985) ("A trial court clearly abuses its discretion if 'it reaches a decision that is so arbitrary and unreasonable as to amount to a clear and prejudicial error of law.' ")). On this record, the district judge gave no reasonable opportunity for the relators to obtain meaningful review of the order prior to the time it had to be completed under threat of contempt.

We conclude the district judge clearly abused his discretion not only in affirming the associate judge's order and issuing his own order for genetic testing, but also by

issuing the order on an emergency *instanter* basis.

### C. Analysis of Adequate Remedy by Appeal

The district judge ordered genetic testing in contravention of the time limitations for an adjudication of parentage set forth in section 160.607. The purpose of the time limitation for bringing a proceeding to determine parentage when a child has a presumed father is to protect the family unit. *In re S.C.L.*, 175 S.W.3d at 560. Once genetic testing is conducted and the results released for use in a proceeding to determine parentage, any harm resulting cannot be undone. *See In re Attorney General*, 195 S.W.3d at 270; *Amanda*, 877 S.W.2d at 487. The harm respecting erroneously ordered genetic testing is one for which there is no adequate remedy at law and mandamus relief is appropriate. *See In re Attorney General*, 195 S.W.3d at 270. Accordingly, on this record, for reasons discussed in the above authorities and in view of the precipitous *instanter* order imposed by the district judge, we conclude relators have no adequate remedy by appeal.

### IV. CONCLUSION

The district judge clearly abused his discretion in ordering genetic testing in this case. Furthermore, relators have no adequate remedy by appeal. Relators' petition for a writ of mandamus is **CONDITIONALLY GRANTED.**

The Court **ORDERS** the Honorable David Hanschen, Presiding Judge of the 254th Judicial District Court, to vacate: (a) the "Order for Parentage Testing" signed by the associate judge on August 30, 2007; (b) the "Order for Genetic Testing" signed by the associate judge on January 14, 2008; (c) his "Order on Notice of Appeal to the Referring Court" signed December 10, 2007; (d) his "Order on Emergency Motion to Stay Genetic Testing" signed on January 14, 2008; (e) his "Order Denying the Office of the Attorney General's De Novo Hearing" signed January 15, 2008; and (f) his "Order for Parentage Testing" signed on January 15, 2008;

The Court **ORDERS** the Honorable David Hanschen, Presiding Judge of the 254th Judicial District Court, to order Forward Edge and Identigene, and their officers, representatives, agents, servants, employees, attorneys, and those persons in active concert or participation with them, including any other testing agency or entity involved in the parentage testing in this case, to do the following: (a) permanently halt the processing and analysis of the genetic testing ordered in this case; (b) immediately destroy the samples taken for genetic testing; (c) **NOT** to disclose to anyone the results of the genetic testing conducted by Forward Edge and Identigene; (d) immediately destroy any record of the testing results; and (e) certify to the trial court in writing, under oath, within ten days of the date of the order of the trial court, that the order of the trial court to halt processing and analysis, and destroy genetic samples and all records of the testing results, has been complied with;

The Court **ORDERS** the Honorable David Hanschen, Presiding Judge of the 254th Judicial District Court, to order Sanjuana Rodriguez, Pedro Rodriguez, the Attorney General of the State of Texas, all attorneys of record, and their officers, representatives, agents, servants, employees, attorneys, and those persons in active concert or participation with them, (a) **NOT** to disclose to anyone the results of the genetic testing conducted by Forward Edge and Identigene; (b) immediately destroy any record of the testing results; and (c) certify to the trial court in writing, under oath,

within ten days of the date of the order of the trial judge, that the order of the district judge to destroy any record of the testing results has been complied with;

The Court **ORDERS** the Honorable David Hanschen, Presiding Judge of the 254th Judicial District Court, to order Sanjuana Rodriguez, Pedro Rodriguez, the Attorney General of the State of Texas, Forward Edge, Identigene, and all attorneys of record, to provide their officers, representatives, agents, servants, employees, attorneys, and those persons in active concert or participation with them, to the extent such individuals are involved in the genetic testing in this case, a copy of the district judge's orders entered in compliance with this Court's order;

The Court **ORDERS** the Honorable David Hanschen, Presiding Judge of the 254th Judicial District Court, to order Sanjuana Rodriguez, Pedro Rodriguez, the Attorney General of the State of Texas, Forward Edge, Identigene, all attorneys of record, and their officers, representatives, agents, servants, employees, attorneys, and those persons in active concert or participation with them, that the information obtained as a result of the January 15, 2008 order for genetic testing not be used for any purpose at any time, including but not limited to the underlying litigation or any other proceeding;

The Court **ORDERS** the Honorable David Hanschen, Presiding Judge of the 254th Judicial District Court, to provide copies of the above orders to the Clerk of this Court and to certify to the Clerk of this Court the status of compliance with each of the orders that have been served upon the persons and parties identified in this opinion, within twenty days of the date of this Court's order accompanying this opinion.

This Court's January 15, 2008 order of stay and this Court's January 25, 2008

order sealing the genetic testing reports **REMAIN IN EFFECT** until further order of this Court.

The writ of mandamus will issue only if the Honorable David Hanschen, Presiding Judge of the 254th Judicial District Court, fails to comply with this Court's opinion and order.