**Reversed and Rendered; Opinion Filed August 20, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-17-00095-CV

## IN THE INTEREST OF J.E.P., A CHILD

**On Appeal from the 256th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-15-07681**

# MEMORANDUM OPINION
Before Justices Lang, Fillmore, and Schenck
Opinion by Justice Lang

John Price appeals the trial court's order adjudicating Price as J.E.P.'s father and ordering Price to pay monthly child support to appellee Camille Willis, J.E.P.'s mother. In four issues on appeal, Price contends (1) the trial court erred in rendering its post-trial amended order, (2) the trial court abused its discretion by applying equitable estoppel in "a manner contrary to Texas's public policy of protecting the established family unit," (3) the trial court abused its discretion by allowing Willis "to maintain her suit against Price on the theory of equitable estoppel" outside the statute of limitations contained in Texas Family Code section 160.607(a), and (4) if equitable estoppel was a "permissible way to adjudicate parentage," the evidence was "not sufficient to satisfy the essential elements of equitable estoppel."

We conclude the trial court abused its discretion by adjudicating Price as J.E.P.'s father and ordering Price to pay child support. The evidence is insufficient to satisfy the essential elements of equitable estoppel. Further, Willis filed her suit outside the statute of limitations specified by Texas Family Code section 160.607(a). Therefore, we reverse the trial court's final order adjudicating Price as J.E.P.'s father and ordering Price to pay child support and render a take nothing judgment as to Willis's claims.

## I.      Factual and Procedural Context

Willis claims she and Price are the parents of J.E.P. who was born on March 10, 2008. At the time J.E.P. was conceived and this case was tried, Price was married to Carolyn Price and Willis was married to Eddie Parker.

On April 23, 2015, Willis filed suit against Price seeking an order of the trial court that Price pay Willis child support for J.E.P. In his May 11, 2015 original answer to Willis' suit, Price claimed Parker was the "presumed father" of J.E.P. and therefore Willis was barred by the four-year statute of limitations pursuant to Texas Family Code section 160.607(a).

After a hearing on May 12, 2015, an associate judge signed a report that stated "the presumed father and the mother of the child did not live together or engage in sexual intercourse with each other during the probable time of conception" and ordered Price to submit to genetic testing. After a hearing held on June 9, 2015, apparently after the results of the testing were provided, the associate judge signed a report that stated "the court finds that based on genetic testing that [Price] is the biological father of [J.E.P.]."

Price then filed a partial appeal of the May 12, 2015 associate judge's report to the trial court, claiming Willis "presented no credible evidence to prove that [Willis] and the presumed

father [Parker] were not living together nor having sexual intercourse at the probable time of conception of [J.E.P.]". On October 22, 2015, a hearing was held on that appeal before the trial court. During the hearing, the trial court heard testimony from Willis, John Price, and Carolyn Price. Willis testified she was the mother of J.E.P and that when J.E.P. was born, on March 10, 2008, she was married to Eddie Parker and was still married to Parker at the time of the hearing. Willis stated she began dating Price in December of 2006, while she was married to Parker and was a student "working in the marketing department" of the school where Price worked. Willis testified that J.E.P. was conceived in June 2007 when she was having a sexual relationship with Price but still married to Parker. However, according to Willis, she was not living with Parker or having a sexual relationship with Parker when J.E.P. was conceived. According to Willis, at some point after J.E.P. was born, a "DNA test was done by [Willis and Price] in the car" and Price found out he was the father of J.E.P. After Price learned he was the father of J.E.P., he "provided [Willis] with $800.00 each month" with payments beginning "about five months after [J.E.P.] was born." According to Willis, around February of 2008, Willis ended her relationship with Price and "went back to [Parker] and [they] decided to work things out." Parker learned J.E.P. was not his child "during the time that [Willis] was pregnant [with J.E.P.]."

Next, Price testified he was in a sexual relationship with Willis in June of 2007 when J.E.P. was conceived. At the time J.E.P. was conceived, Price was aware that Willis was married to Parker and "as far as [he] [knew]" Willis was living at her home with Parker. According to Price, during the period of time when J.E.P. was conceived, Willis "would tell [Price]…when she had sex with [Parker]." Price acknowledged he started to provide Willis financial assistance after he found out he was the father of J.E.P. and that he had consistently provided financial assistance to J.E.P. until this case was filed.

Carolyn Price, Price's wife, also testified. According to Carolyn, Willis contacted her in 2007 and asked Carolyn to meet her. Willis told Carolyn she "wanted money" because Price "was the father [of J.E.P.]." Carolyn stated Willis "told [her] when she had sex with her husband she didn't let him [ejaculate] in her so she knew it was [Price's] baby." Carolyn explained that Willis did not say anything to her about being separated from Parker during the period of time in which J.E.P. was conceived. After the hearing, the trial court orally announced it "overrul[ed]" the associate judge's finding that Parker and Willis did not live together or engage in sexual intercourse with each other during the probable time of conception.

On October 26, 2015, Willis filed a "Second Amended Petition in Suit Affecting Parent-Child Relationship." In that pleading, she asserted an equitable estoppel argument for the first time, contending Price "induced [Willis] to delay filing suit until after a limitations period had run" and Price was therefore equitably estopped "from claiming he is not the biological and adjudicated father" of J.E.P.

On January 12, 2016, Price filed a motion for traditional summary judgment arguing "the statute of limitations bars Willis from seeking to adjudicate Price as the father of her seven-year old child, 'J.E.P.'" On February 3, 2016, the trial court denied Price's motion for summary judgment. Price then filed a motion for reconsideration of his motion for summary judgment, contending (1) "[e]quitable estoppel as alleged by [Willis] is inapplicable to the facts of [the] case as a matter of law" and (2) "in the alternative, if equitable estoppel were to be considered by the Court, [Price] has carried his burden to negate the fact issue raised by [Willis] as a matter of law." Price filed "in the alternative" to his motion for reconsideration of his motion for summary judgment, a motion for partial summary judgment seeking a ruling that the suit was "time-barred by an applicable statute of limitations" under section 160.607(a) of the Texas Family Code. On

June 21, 2016, the trial court granted Price's motion for partial summary judgment on his affirmative defense of statute of limitations and ordered that "any trial in this matter shall be limited to the issue of equitable estoppel."

A trial was held on August 24, 2016. The trial court concluded Price is J.E.P.'s father, ordered Price to pay child support, and allowed Price limited visitation with J.E.P. On the same day, the trial court signed an "Order in Suit Affecting the Parent-Child Relationship" dated August 24, 2016 that "correct[ed] its prior [partial summary judgment] ruling [of June 12, 2016] to find[] that four years ha[d] passed pursuant to the statute of limitations on the mother's claim; however, despite the lapse of four years the statute of limitations was tolled as a result of her defense claim for equitable estoppel." The final order was consistent with the trial court's August 24, 2016 order and was signed by the trial court on November 1, 2016. This appeal followed.

## II.    Standard of Review

"A trial court's decision in a paternity action or action establishing the parent-child relationship is reviewed for an abuse of discretion." *In the Interest of P.S.*, 505 S.W.3d 106, 109-10 (Tex. App.—Ft. Worth 2016, no pet.). "A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law." *In re Rodriguez*, 248 S.W.3d 444, 449. (Tex. App.—Dallas 2008, orig. proceeding); *see also In re Tex. Am. Express, Inc.*, 190 S.W.3d 720, 723 (Tex. App.—Dallas 2005, orig. proceeding) (per curiam). "In determining whether the trial court abused its discretion in the resolution of factual matters, the court of appeals may not substitute its judgment for that of the trial court and may not disturb the trial court's decision unless it is shown to be arbitrary and unreasonable." *In re Rodriguez*, 248 S.W.3d at 449. "A trial court has no 'discretion' in determining what the law is or applying the law to the facts." *Walker v. Packer*, 827

S.W.2d 833, 840 (Tex. 1992). "Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion." *Id.*

### III. Statute of Limitations for Paternity Actions Involving Presumed Father
#### *A. Applicable Law*

A man married to the mother of a child born during the marriage is presumed to be the father of the child. TEX. FAM. CODE ANN. § 160.204(a) (West 2014). When unrebutted, this presumption establishes the parent-child relationship between the child and the man presumed to be the father. TEX. FAM. CODE ANN. § 160.201(b)(1) (West 2014). A man who is a "presumed father" is recognized as the father of the child "until that status is rebutted or confirmed in a judicial proceeding." TEX. FAM. CODE ANN. § 160.102(13) (West 2014); *In re S.C.L.,* 175 S.W.3d 555, 557 (Tex. App.—Dallas 2005, no pet.). This presumption may be rebutted only by (1) a proceeding to adjudicate parentage under the Texas Family Code, or (2) the filing of a valid denial of paternity by the presumed father in conjunction with the filing by another person of a valid acknowledgment of paternity. TEX. FAM. CODE ANN. § 160.204(b) (West 2014); *In re S.C.L.*, 175 S.W.3d at 557. When a child has a presumed father, the rule is that a proceeding to adjudicate parentage must be commenced "not later than the fourth anniversary of the date of the birth of the child." TEX. FAM. CODE ANN. § 160.607(a) (West 2014). However, "a proceeding seeking to adjudicate the parentage of a child having a presumed father may be maintained at any time if the court determines that:

> (1) the presumed father and the mother of the child did not live together or engage in sexual intercourse with each other during the probable time of conception; or
>
> (2) the presumed father was precluded from commencing a proceeding to adjudicate the parentage of the child before the expiration of the time prescribed by Subsection (a) because of the mistaken belief that he was the child's biological father based on misrepresentations that led him to that conclusion."

TEX. FAM. CODE ANN. § 160.607(b).

"The party seeking to avoid the limitation [to adjudicate parentage] bears the burden of proving a provision that would toll the statute of limitations." *In re Rodriguez*, 248 S.W.3d at 451. "A party must be entitled to maintain a proceeding to adjudicate parentage as set out in [the Texas Family Code] before a trial court can order genetic testing." *Id.* at 450-51.

### A.  Application of the Law to the Facts

First, we address Price's third issue that asserts the trial court abused its discretion when it concluded Willis "failed to establish any statutory limitations exception[s] under Texas Family Code § 160.607(b)" but then allowed Willis "to maintain her suit against Price on the theory of equitable estoppel."

The record reflects it is undisputed that J.E.P. was over four years old at the time Willis' petition to adjudicate parentage was filed and that he was born during Willis' marriage to Parker. Therefore, it is also not disputed that Parker is the "presumed father" of J.E.P pursuant to Texas Family Code section 160.240(a)(1). *See* TEX. FAM. CODE. ANN. § 160.240(a)(1). Accordingly, any proceeding to adjudicate parentage was subject to the four-year time limitation set forth in section 160.607(a) of the Texas Family Code. *See* TEX. FAM. CODE. ANN. § 160.607(a). As a matter of law, Willis was barred from bringing a proceeding to adjudicate the parentage of J.E.P. unless she met her burden to present evidence of an exception to the four-year period of limitations in section 160.607(a).  *See* TEX. FAM. CODE. ANN. § 160.607(a), (b).

In its order of August 24, 2016, the trial court stated that "four years ha[d] passed pursuant to the statute of limitations on [Willis's] claim; however, despite the lapse of four years the statute of limitations was tolled as a result of [Willis's] defense claim for equitable estoppel." The order did not state Willis had proven an applicable exception to the statute of limitations in section 160.607(a) of the Texas Family Code. Unless an exception provided by section 160.607(b) is

proven, the limitations period for an adjudication of J.E.P.'s parentage expired on March 10, 2012, four years after J.E.P.'s birth. *See* TEX. FAM. CODE. ANN. § 160.607(a). The record shows Willis filed her petition to establish the parent-child relationship between J.E.P. and Price on April 23, 2015, which is after the expiration of the limitation period. *See id.*

## IV.    Applicability of Equitable Estoppel

### A.  Applicable Law

"The doctrine of equitable estoppel requires: (1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations." *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515-16 (Tex. 1998). "A defendant may be estopped to interpose the limitations bar, which would otherwise be available to him, when he has induced the plaintiff not to file suit within the limitations period." *Leonard v. Eskew*, 731 S.W.2d 124, 129 (Tex. App.—Austin 1987, writ ref d n.r.e.). However, any delay in filing a cause of action must be "unmixed with any want of diligence on the plaintiff's part." *Id.* "[A] claimant must be diligent to file the cause of action she knows she has; she may not continue to rely upon the defendant's original inducement beyond a point when it becomes unreasonable to do so." *In re R.O.* No. 03–04–00506–CV, 2005 WL 910231, at *6 (Tex. App.—Austin Apr. 21, 2005, no pet.) (mem. op.).

### B.  Application of the Law to the Facts

Price argues in his fourth issue that "[i]f equitable estoppel is a permissible way to adjudicate parentage outside the scope of statutory authority" the evidence was not sufficient to satisfy "the essential elements of equitable estoppel." Willis responds that Price's "words and

conduct caused Mrs. [sic] Willis to forbear her suit against [Price] for parentage, and there [was] no lack of diligence on Mrs. [sic] Willis's part." Therefore, according to Willis, Price was equitably estopped from relying on the statute of limitations in section 160.607(a) of the Texas Family Code.

Price cites a factually similar case, *In re R.O.,* that analyzes the application of equitable estoppel as it relates to the statute of limitations in section 160.607 of the Texas Family Code. *In re R.O.,* 2005 WL 910231. However, in that case, that court affirmed a summary judgment motion granted in favor of the alleged father that the statute of limitations had expired on a claim of his alleged paternity. Further, the court of appeals concluded the mother did not meet her burden of proof to demonstrate a material issue of fact as to her assertion that the alleged father was "estopped" to assert the statute of limitations.

In the case of *In re R.O.*, the mother "had an extramarital affair" with a man named Alcozar from 1994 until 1998. *See In re R.O.,* 2005 WL 910231, at *1. During the "probable time of conception," of the child, the mother had "sexual intercourse with her husband" and "[a]lso within that time, [the mother] had sexual intercourse with Alcozar, who was married to another person." *Id.* The mother "did not tell her husband about the affair or that she doubted his paternity until 2001." *Id.* Neither the husband nor Alcozar "took a paternity test, but [the husband] openly treated R.O. as his child." *Id.* After the mother learned "Alcozar and his wife were expecting a child," she wrote a letter to Alcozar and asked him to "pay exactly one dollar per week until R.O.'s eighteenth birthday into an account she had opened for R.O." *Id.* at *1. After Alcozar received that letter "he began making weekly deposits." *Id.* at *1. Shortly after the first letter, the mother wrote Alcozar a second letter that stated she had "done some research regarding child support" and requested Alcozar pay her $10,000 a year or $833 each month until R.O.'s 18th birthday. *Id.* Alcozar made "six or seven of the additional $833 payments." *Id.* After Alcozar's last payment, the mother

testified that "Alcozar sent a message through a friend that he was no longer going to pay child support…[and] brought up the subject of the statute of limitations." *Id.* at *2. Soon after the mother received that message, R.O.'s maternal grandmother filed suit as R.O.'s "next friend, seeking to establish R.O.'s paternity" in 2003. *Id.* R.O.'s mother and her husband joined with the maternal grandmother in that suit. *Id.*

After answering the suit, Alcozar filed both a traditional motion for summary judgment and a no evidence motion for summary judgment asserting, among other grounds, the "expiration of the limitations period for a parentage action involving a child with a presumed father [and] inapplicability of estoppel." *Id.* The mother responded by offering the letters she wrote to Alcozar, her affidavit, and other documents showing money received from Alcozar. The trial court granted summary judgment in favor of Alcozar without stating the grounds for its ruling. The mother then appealed, alleging, in relevant part, that Alcozar "was estopped from asserting the statute of limitations defense" because Alcozar "induced her not to file suit before the expiration of limitations arose." *Id.* at *5.

The Austin Court of Appeals observed the mother's "intended application of estoppel [was] unusual, as it is typically used to protect an established parent-child relationship, not to dismantle it." *Id.* at *5.[1] Then, that court concluded Alcozar did not induce the mother to forbear her suit against him, and also decided the mother "did not exercise due diligence in filing the suit she knew

---

[1] Citing *In re Shockley*, the Court of Appeals explained: "Application of estoppel in paternity actions is aimed at achieving fairness as between the parents by holding them, both mother and father, to their prior conduct regarding the paternity of the child. Estoppel is based on the public policy that children should be secure in knowing who their parents are. If a person has acted as the parent and bonded with the child, the child should not be required to suffer the potentially damaging trauma that may come from being told that the father she has known all her life is not in fact her father. In determining whether the doctrine should be applied to a particular case, the child's best interests are of paramount concern. To that end, the courts are more inclined to impose equitable estoppel to protect the status of a child in an already recognized and operative parent-child relationship." *In re R.O.,* 2005 WL 910231, at *5 (quoting *In re Shockley*, 123 S.W.3d 642, 651-52 (Tex. App.—El Paso 2003, no pet.)).

she had" because (1) "over a year and a half passed between August 2001, when [the mother] told her husband that he was not R.O.'s father, and November 2002, when the statute of limitations expired," (2) prior to the expiration of limitations, the mother's attorney "specifically inquired whether she 'had entertained the idea' of filing a lawsuit" and the mother responded she "did not want to do that," and (3) the mother "eventually filed suit…five months after the statute of limitations expired." *In re R.O.,* 2005 WL 910231, at *6.

Finally, the court of appeals determined the "doctrine of estoppel [was] inapplicable because" the mother's evidence "on the[] challenged elements of estoppel" did not establish the mother was induced "not to sue" Alcozar. *Id.* at *7, 8.

In the case before us, Willis claimed she proved equitable estoppel. She cited the following testimony by Price at trial as evidence that she was induced to forbear her suit against Price:

> Q. And that's one of the reasons you were making the payments? I mean, you're saying it was for your privacy. But you knew that if she sued you for child support it would become public?
> A. Yes, I knew.
> Q. So the reason you were making the payments was so that [Willis] would not sue you for child support?
> A. So that she would keep silent, yes.
> Q. Including not suing you for child support, correct?
> A. Yes. Yes.

We cannot agree with Willis that she met her burden to prove estoppel. Even were we to conclude this testimony establishes that Price's words and conduct caused Willis to forbear her suit against Price for parentage, Willis cites no evidence that she exercised diligence in filing a lawsuit against Price. She only offers a conclusory statement that "there [was] no lack of diligence on [her] part." However, diligence is required to prove equitable estoppel. *See Palais Royal, Inc. v. Gunnels,* 976 S.W.2d 837, 849 (Tex. App.—Houston [1st Dist.] 1998, pet. dism'd) ("[T]he failure to file suit must be unmixed with want of diligence on the plaintiff's part.").

During trial, Willis testified that she did not sue Price for child support before 2015 "[b]ecause [Willis and Price] had an agreement that [Price] would pay child support." Additionally, similar to the facts in *In re R.O.*, over four years passed between the time Willis told her husband, Parker, that he was not J.E.P.'s father, and March 10, 2012, when the statute of limitations expired. *See In re R.O.*, 2005 WL 910231. Further, Willis filed suit over three years after the statute of limitations expired.[2] Willis's reliance on her "agreement" with Price does not establish Willis's diligence in filing her lawsuit against Price. *See Leonard*, 731 S.W.2d at 129 (quoting *Neal v. Pickett*, 280 S.W.2d 748, 753 (Tex. Comm'n App. 1926, judgm't adopted) (Concluding one claiming equitable estoppel "must not have ignored the requirements of due care and blindly relied upon a situation as being what it seemed rather than as being what it in reality was.")). On this record, we conclude Willis did not present evidence of the required elements of equitable estoppel. The trial court erred.

Because of our disposition of issues three and four, we do not need to address Price's additional issues.

## V.     Conclusion

We conclude the trial court abused its discretion by adjudicating parentage and ordering Price to pay child support. Accordingly, we reverse the trial court's order adjudicating parentage

---

[2] On March 10, 2012, the limitations period expired four years after J.E.P.'s birth on March 10, 2008. Willis filed this suit on April 23, 2015.

and ordering Price to pay child support and render a take nothing judgment on Willis's action.

/Douglas S. Lang/

DOUGLAS S. LANG
JUSTICE

170095F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF J.E.P., A CHILD,

No. 05-17-00095-CV

On Appeal from the 256th Judicial District Court, Dallas County, Texas
Trial Court Cause No. DF-15-07681.
Opinion delivered by Justice Lang. Justices Fillmore and Schenck participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and judgment is **RENDERED** that Willis take nothing on her action.

Judgment entered this 20th day of August, 2018.