

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00062-CV

_____


IN THE INTEREST OF K.M.T., A CHILD


On Appeal from the County Court at Law
Rusk County, Texas
Trial Court No. 2013-03-155-CCL


Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

O P I N I O N

Garry Antunes, Jr., appeals the dismissal with prejudice of his paternity suit alleging he is the father of K.M.T., a child born to Mallory Layne Terry while she was married to John Terry. Antunes and the Terrys agreed to a hearing concerning the application of Section 160.607 of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 160.607 (West Supp. 2012). At the hearing, conclusive evidence was introduced that Antunes filed his paternity suit four years and approximately six days after the child's birth. Following the hearing, the trial court found Antunes had not timely pursued his paternity claim and dismissed the paternity suit with prejudice.

On appeal, Antunes raises two issues. Antunes' first issue claims the trial court erred "in sustaining Appellee's plea of limitation because Appellant's petition seeking parentage was filed nine days after the fourth anniversary of the child's birthday." Antunes' second issue questions whether "the Appellee's conduct equitably estop[ped] her from asserting a plea of limitation." We conclude Antunes' issues do not demonstrate reversible error and affirm the judgment of the trial court.

I.      Facts

Mallory married her husband, John, on July 30, 2005, and the couple has never separated or divorced. During the marriage, Mallory and Antunes had extramarital relations from March 2008 until October 2008. Mallory gave birth to K.M.T. on March 13, 2009, while still married to John. Antunes filed his paternity suit on March 19, 2013.

Mallory testified that she had sexual relations with both John and Antunes during the probable time of conception. Mallory admitted that she gave Antunes a Father's Day card and

2

picture book containing photographs of K.M.T. Mallory also admitted that she allowed Antunes visitation with the child. Mallory testified that Antunes was aware K.M.T. might be his child.

John testified that Mallory eventually told him about the affair and that the couple was able to "patch" up their marriage. John, though, denied that Mallory had ever told him K.M.T. was Antunes' biological child.

Antunes testified that the affair was occurring at the probable time of conception. When asked, "[H]as Mrs. Terry ever told you that you are the father of [K.M.T.]," Antunes responded, "Yes." Antunes later testified that she had done so on numerous occasions and that she had sent him a Father's Day card and a picture book of K.M.T.

There is evidence that Antunes was aware the child might have been his prior to the child's birth. The Terrys introduced an e-mail from Antunes approximately four months before the child's birth in which Antunes provided Mallory with a link to a DNA testing website and suggested that DNA testing could be performed on Mallory's blood at the hospital.[1] Mallory, though, testified that she had no personal knowledge as to whether a DNA paternity test had been performed.[2] Jessica Riley, Melisa Abbott, and Amy Robertson all testified that Mallory told them Antunes was the father of K.M.T.

---

[1] The record indicates this email was tendered by the Terrys as an exhibit at trial. The Terrys, though, never requested it to be admitted into evidence, and the trial court never formally admitted it into evidence. At trial, Antunes did not object to the absence of a formal admission, and the parties treated the email as if it had been admitted into evidence. Since there has been no complaint about this irregularity, we will treat the email as if it had been admitted. *See, e.g.*, *Sanchez v. Bexar Cnty. Sheriff's Dep't*, 134 S.W.3d 202, 203 (Tex. 2004) (per curiam) (an exhibit treated by parties as if it had been formally admitted "is, for all practical purposes, admitted").

[2] Mallory testified that she and the child had given Antunes oral mouth swabs for a DNA test and Antunes had told her the result of a DNA test. Mallory does not mention what the "results" were.

## II. Standard of Review

As a preliminary matter, we must first determine the appropriate standard of review in this case. The case was disposed of pretrial at a hearing ostensibly on a plea to the jurisdiction. "A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject matter jurisdiction." *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004); *see Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Although the Texas Supreme Court has permitted pleas to the jurisdiction that require resolution of jurisdictional facts,[3] the issue must concern a court's subject-matter jurisdiction.

A statute of limitations is a plea in bar and does not affect the trial court's subject-matter jurisdiction. *See BancorpSouth Bank v. Prevot*, 256 S.W.3d 719, 726 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (limitations do not deprive court of subject-matter jurisdiction); *Montgomery Cnty. v. Fuqua*, 22 S.W.3d 662, 669 (Tex. App.—Beaumont 2000, pet. denied) (limitations is plea in bar). Affirmative defenses, such as limitations and repose, should normally be raised either in a summary judgment motion or at trial. *See Tex. Underground, Inc. v. Tex. Workforce Comm'n*, 335 S.W.3d 670, 676 (Tex. App.—Dallas 2011, no pet.); *In re D.K.M.*, 242 S.W.3d 863, 865 (Tex. App.—Austin 2007, no pet.); *see also Fed. Deposit Ins. Corp. v. Lenk*, 361 S.W.3d 602, 609 (Tex. 2012) (statute of repose is affirmative defense).

Antunes, however, explicitly agreed on the record to the procedure used and has raised no issue on appeal. The San Antonio Court of Appeals has opined,

> The practice of misnaming a plea in bar to procure a preliminary hearing to dispose of a case is also discouraged. However, a speedy and final judgment may be obtained on the basis of matters in bar and without formality of trial on merits,

---

[3]*See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

4

> if the parties so agree or if summary judgment procedure is utilized. In the event summary judgment procedure is not utilized when a plea in bar is asserted, the reviewing court may treat a pretrial dismissal with prejudice as a summary judgment because such dismissal has the same effect as entry of a take-nothing judgment. In such case, the reviewing court will review the record as if summary judgment was granted to determine whether the movant satisfied the notice requirements and his burden of proof under Texas Rule of Civil Procedure 166a.

*Martin v. Dosohs I, Ltd.*, 2 S.W.3d 350, 354–55 (Tex. App.—San Antonio 1999, pet. denied) (citations omitted); *see Briggs v. Toyota Mfg. of Tex.*, 337 S.W.3d 275, 281 (Tex. App.—San Antonio 2010, no pet.). We note that the Houston First District Court has adopted the reasoning of the San Antonio Court in a memorandum opinion and the Dallas Court has cited the reasoning favorably in dictum. *See Henny v. JPMorgan Chase Bank, N.A.*, No. 01-10-00476-CV, 2012 Tex. App. LEXIS 1208 (Tex. App.—Houston [1st Dist.] Feb. 16, 2012, no pet.); c*f. Tex. Underground, Inc.*, 335 S.W.3d at 676 (reversing because procedure objected to at trial).

While we certainly agree with the San Antonio Court that this practice should be discouraged, we do not agree that this case should be treated as the equivalent of a summary judgment. Although we might under other circumstances treat a pretrial disposition as a summary judgment, we do not believe the circumstances of this case merit such treatment.

The substance and nature of the trial court proceedings were not a pretrial ruling on a plea to the jurisdiction, but rather an agreed separate trial[4] on the issue of whether Section 160.607 barred suit. Rule 174(b) permits a trial court to order separate trials for any claim or issue "in furtherance of convenience or to avoid prejudice." *See* TEX. R. CIV. P. 174(b). "An issue that is tried separately under rule 174 need not constitute a complete lawsuit in itself." *Grocers Supply,*

---

[4]"An order for a separate trial (bifurcation) leaves the lawsuit intact but enables the court to hear and determine one or more issues without trying all controverted issues at the same hearing." *In re Allstate Cnty. Mut. Ins. Co.*, 209 S.W.3d 742, 745 (Tex. App.—Tyler 2006, orig. proceeding); *see In re Ben E. Keith Co.*, 198 S.W.3d 844, 850 (Tex. App.—Fort Worth 2006, orig. proceeding).

*Inc. v. Cabello*, 390 S.W.3d 707, 726 (Tex. App.—Dallas 2012, no pet.). Our review of the trial court's decision to grant a separate trial is for an abuse of discretion. *Id.*; *cf. In re Tex. Collegiate Baseball League, Ltd.*, 367 S.W.3d 462, 467 (Tex. App.—Fort Worth 2012, orig. proceeding) (fee claim and malpractice claim required to be litigated together because claims concerned same facts and issues).

The plea to the jurisdiction was filed on the same day as the hearing and contains no supporting affidavits. The record contains no written response to the plea to the jurisdiction. The hearing consisted of testimony from a number of witnesses, including direct examination and cross-examination. The trial court expressed concerns over whether this issue was jurisdictional and asked the attorneys on the record:

> THE COURT: One thing I want to make sure that we're clear on is that both parties are wanting to proceed to a ruling today on the limitation issue under 160.607; is that correct?
>
> . . . .
>
> THE COURT: . . . I think y'all can agree that we're going to have a hearing on it and stipulate that that will be decided today. Is that what we're doing?
>
> . . . .
>
> THE COURT: We're not going to have to re-hear this or anything?

Antunes answered these three questions by the trial court in the affirmative. Counsel for the Terrys, who remained silent during the three questions, was present during this questioning and appears to have initiated the questioning of the trial court by "mov[ing] for a directed verdict" in addition to arguing that the trial court lacked jurisdiction. Finally, we note that the trial court issued findings of fact. We conclude that the agreed procedure used in this case should be

treated as a separate trial of the Section 160.607 issue. Thus, we will review this case based on the standards for a bench trial.[5]

The evidence is legally insufficient if there is a complete absence of evidence establishing a vital fact, the only evidence offered to prove a vital fact cannot be considered due to a rule of law or evidence, there is less than a scintilla of evidence to prove the vital fact, or the opposite of the vital fact is conclusively established. *Jelinek v. Casas*, 328 S.W.3d 526, 532 (Tex. 2010). More than a scintilla of evidence exists when the evidence "'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997) (quoting *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995)). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). In a legal sufficiency analysis, we credit favorable evidence if a reasonable fact-finder could and disregard contrary evidence unless a reasonable fact-finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

---

[5]Generally, when a separate trial is granted, a portion of the case remains to be decided. When the entire case has been adjudicated, a final judgment is entered. Here, if the result of this proceeding had been a denial of the statute of limitations claim, further proceedings would have been necessary. Since the issue decided here was dispositive, nothing further was left to adjudicate, and the judgment entered is a final one. TEX. R. CIV. P. 174(b), Opinion of Subcommittee on Interpretation of Rules ("The court has authority to order trial on any plea in bar or any separate issues and to render judgment solely on the plea or issue tried found to be decisive.") (citing 5 Texas B.J. 125 (1942); 8 Texas B.J. 12 (1945)). This procedure has been upheld when the issue was a plea of limitation. *Phipps v. Miller*, 597 S.W.2d 458 (Tex. Civ. App.—Dallas 1980, writ ref'd n.r.e.). In cases with more complex facts, e.g., discovery issues, other courts have rejected this procedure. *LaGloria Oil & Gas Co. v. Carboline Co.*, 84 S.W.3d 228 (Tex. App.—Tyler 2001, pet. denied). Here, both parties agreed to this procedure and have not raised an issue on appeal. We also note that this judgment, even if interlocutory, may have been eligible for appeal due to a recent statutory addition. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(d)–(f) (West Supp. 2012) (trial court may authorize appeal from otherwise non-appealable order if it involves controlling question of law and appeal may advance ultimate termination of litigation.)

When reviewing a factual sufficiency challenge, we examine the entire record, considering the evidence in favor of and contrary to the challenged finding, and set aside the jury's verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam); *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986).

## III. Section 160.607 Bars the Paternity Suit

In his first issue, Antunes argues that the trial court erred in finding Section 160.607 bars his paternity suit. Section 160.607 provides that when a child has a presumed father, a proceeding to adjudicate parentage "shall be commenced not later than the fourth anniversary of the date of the birth of the child." TEX. FAM. CODE ANN. § 160.607(a). The statute, however, contains two exceptions. A proceeding seeking to disprove the father-child relationship between a child and the child's presumed father may be maintained at any time if the court determines that:

> (1)  the presumed father and the mother of the child did not live together or engage in sexual intercourse with each other during the probable time of conception; or

> (2)  the presumed father was precluded from commencing a proceeding to adjudicate the parentage of the child before the expiration of the time prescribed by Subsection (a) because of the mistaken belief that he was the child's biological father based on misrepresentations that led him to that conclusion.

TEX. FAM. CODE ANN. § 160.607(b). "The party seeking to avoid limitations bears the burden of proving a provision that would toll the statute of limitations." *In re J.H.*, 264 S.W.3d 919, 922 (Tex. App.—Dallas 2008, no pet.).

8

When interpreting a statute, we attempt to ascertain and give effect to the Legislature's intent, and if the text is unambiguous, the Legislature's intent is determined by "the statute's plain language unless that interpretation would lead to absurd results." *Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc*., 145 S.W.3d 170, 176–77 (Tex. 2004). The plain language of this section is unambiguous—any paternity suit filed more than four years after the child's birth is procedurally barred. Antunes does not argue that a statutory exception contained in subsection (b) is applicable to this case. Antunes testified that Mallory had told him she was not having sex with John at the probable time of conception. The only possible exception, (b)(1)[6], requires proof that the married couple is not living together and that they are not having sexual relations during the probable time of conception. There is no evidence that Mallory and John were not living together at the probable time of conception. The evidence is legally and factually sufficient to support the trial court's finding that the suit was not timely. Antunes' first issue is overruled.

## IV. Assuming Equitable Estoppel Is an Available Affirmative Defense, There Is Legally and Factually Sufficient Evidence to Support the Rejection of Equitable Estoppel

In his second issue, Antunes claims the common-law defense of equitable estoppel should permit the limitations to be tolled. Because Mallory represented that Antunes was the father and because that representation induced Antunes not to bring suit, Antunes believes Mallory's conduct was sufficiently deceptive for equitable estoppel to apply. The Terrys argue

---

[6]The exception in 160.607(b)(2) only pertains to a presumed father, in this instance John Terry. TEX FAM. CODE ANN. § 160.204(a)(1) (West 2008) (A man is presumed to be the father of a child if "he is married to the mother of the child and the child is born during the marriage.").

that the only exceptions to the four year time limitation are the statutory exceptions contained in subsection (b). Alternatively, they argue that there is no evidence of any misrepresentation.

The Terrys cite *In re Rodriguez*, 248 S.W.3d 444 (Tex. App.—Dallas 2008, orig. proceeding), for the proposition that "[a]bsent statutory exceptions, a court cannot order genetic testing of a child to determine parentage outside of the four year statute of limitations." *Rodriguez*, though, does not discuss whether equitable estoppel, a common-law defense to limitations, is available. *Rodriguez* merely held that the presumed father, who brought suit more than four years after the child was born, did not prove either of the two statutory exceptions available at that time.[7] *Id.*

Equitable estoppel is generally a defense to the application of a statute of limitations. *See, e.g.*, *Forrest v. Vital Earth Res.*, 120 S.W.3d 480, 486 (Tex. App.—Texarkana 2003, pet. denied).

Mallory argues that she made no false or misleading statement to Antunes. Assuming, without deciding, that equitable estoppel is an available defense, Antunes has failed to establish all of the elements. Antunes bore the burden to prove the five elements of equitable estoppel:

> (1) a false representation or concealment of material fact; (2) the representation was made with knowledge or the means of knowledge of the true facts; (3) the representation was made to a party without knowledge or the means of knowledge of the true facts; (4) the representation was made with the intention that it would be acted on; and (5) the party to whom the representation was made relied on it to his or her prejudice.

*Hill v. Bartlette*, 181 S.W.3d 541, 545 (Tex. App.—Texarkana 2005, no pet.).

---

[7]The two exceptions in subsection (b) have been amended since *Rodriguez* was decided.

10

As argued by the Terrys, the record contains no evidence of a false representation relied upon by Antunes. While there is some evidence that Mallory may have misrepresented to John that the child was John's biological child,[8] the record contains no evidence that Mallory made any misrepresentations to Antunes. To the contrary, the overwhelming weight of the evidence establishes that Mallory has always represented to Antunes that he was the biological father. Antunes admitted that Mallory has consistently represented that he was the father.[9] Therefore, Antunes' failure to timely pursue a paternity suit was not induced by any misrepresentation.

Equitable estoppel requires reliance on a concealment or false representation. The record contains no evidence that Antunes' failure to act was induced by concealment or a misrepresentation. The evidence is legally and factually sufficient to support the trial court's rejection of equittable estoppel. Antunes' second issue is overruled.

We affirm the judgment of the trial court.

Jack Carter
Justice

Date Submitted:     September 30, 2013
Date Decided:       October 18, 2013

---

[8]John testified that Mallory had represented to him that the child was his biological child.

[9]Mallory admitted her motive in admitting Antunes was the father and "let[ting] him in a little bit on what's going on in her life" was to keep him "happy enough to stay away from her." Equitable estoppel, though, requires a misrepresentation, not just a motive.