

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00103-CV

_____

THE FANNIN COUNTY COMMUNITY SUPERVISION
AND CORRECTIONS DEPARTMENT, Appellant

V.

GLENDA SPOON, Appellee

On Appeal from the 336th District Court
Fannin County, Texas
Trial Court Nos. CV-10-39887, CV-12-40666

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

The Fannin County Community Supervision and Corrections Department (Department) appeals the denial of its plea to the jurisdiction in a whistleblower action filed by its former employee, Glenda Spoon. "[W]histleblowing is 'the act of a man or woman who, believing that the public interest overrides the interest of the organization he [or she] serves, publicly "blows the whistle" if the organization is involved in corrupt, illegal, fraudulent, or harmful activity.'"[1] *Winters v. Houston Chronicle Pub. Co.*, 795 S.W.2d 723, 727 (Tex. 1990) (Doggett, J., concurring) (quoting CONFERENCE ON PROFESSIONAL RESPONSIBILITY, WHISTLE BLOWING: THE REPORT OF THE CONFERENCE ON PROFESSIONAL RESPONSIBILITY vii (Kate Blackwell, Ralph Nader & Peter J. Petkas eds., 1972)). The whistleblower's "hope is that the law will arrive and protect not only the person's rights[,] but the peace and good order of the community." *Id.* at 728. Whistleblowers may face adverse employment actions. *Id.* "'Almost always, their experiences are traumatic, and their careers and lives are profoundly affected.'" *Id.* (quoting ALAN F. WESTIN, WHISTLEBLOWING! LOYALTY AND DISSENT IN THE CORPORATION 2 (1981)). Our democratic society "'needs the services of the whistleblower to provide information necessary for its rules to be enforced.'" *Id.* (quoting John A. Robertson, *Commentary: Whistleblowing and the Role of the Federal Government*, *in* WHISTLEBLOWING IN BIOMEDICAL RESEARCH 159, 159–60 (Judith P. Swazey & Stephen R. Scher eds., 1981)). Thus, we must "encourage the honest and concerned employee to blow the whistle on illegalities and actual

---

[1] "The term [whistleblowing] is derived from the act of an English bobby blowing his whistle upon becoming aware of the commission of a crime to alert other law enforcement officers and the public within the zone of danger. Like this corner law enforcement official, the whistleblower sounds the alarm when wrongdoing occurs on his or her 'beat,' which is usually within a large organization." *Winters*, 795 S.W.2d at 727; TAYLOR BRANCH & CHARLES PETERS, BLOWING THE WHISTLE: DISSENT IN THE PUBLIC INTEREST 18 (1972).

malpractices . . . [and] protect [her] against recrimination." *Id.* Sections 554.001 through 554.010 of the Texas Government Code, commonly referred to collectively as the Texas Whistleblower Act, do just that. *See* TEX. GOV'T CODE ANN. §§ 554.001–.010 (West 2012). "The Act evidences two legislative purposes: (1) to protect public employees from retaliation by their employer when, in good faith, employees report a violation of the law, and (2) to secure lawful conduct on the part of those who direct and conduct the affairs of public bodies." *City of New Braunfels v. Allen*, 132 S.W.3d 157, 161 (Tex. App.—Austin 2004, no pet.).

Spoon, a former community supervision officer with the Department, alleged that she was terminated for reporting what she believed were various violations of the law to Fannin County District Attorney Richard Glaser.[2] Wielding the powerful shield of sovereign immunity, the Department challenged the trial court's subject-matter jurisdiction to hear the dispute. Under the Texas Whistleblower Act (the Act), sovereign immunity is expressly waived when a public employee alleges a violation of Chapter 554 of the Texas Government Code. TEX. GOV'T CODE ANN. § 554.0035. After an evidentiary hearing, the trial court (1) determined that Spoon had met the requirements for protection under the Act, (2) found that the Department's sovereign immunity was waived by the Act, and (3) denied the Department's plea to the jurisdiction. We affirm the trial court's ruling.

---

[2]Spoon also sued Department Director Debra Roberts, 336th Judicial District Court Judge Laurine Blake, and other officials in their individual capacities. The trial court granted summary judgment to the various officials in their individual capacities, and that ruling is not challenged on appeal.

## I.       Factual Background

Under the Act, governmental immunity is waived if the plaintiff (1) is a public employee and (2) alleges a violation of the Act. *Id.*; *see State v. Lueck*, 290 S.W.3d 876, 881–82 (Tex. 2009).[3]  A violation of the Act occurs when a governmental entity retaliates against a public employee for making a good-faith report of a violation of law to an appropriate law enforcement authority.  TEX. GOV'T CODE ANN. § 554.002(a).  To defeat the Department's plea to the jurisdiction raising sovereign immunity, Spoon was required to make a prima facie showing on each element of the alleged violation of the Act.  *See Lueck*, 290 S.W.3d at 881–82.

### A.       Spoon's Pleadings

Spoon alleged that she became aware of matters of public concern and "certain illegal acts which were occurring within the internal operations" of the Department.  According to Spoon's third amended petition, she reported the following matters to Glaser:

1. The Department's office manager, Gail Young, who was a candidate for the position of Fannin County Tax Assessor, was using the Department's "equipment, including paper, envelopes, stamps, computers, and internet resources to promote her campaign" during the Department's normal business hours.

2. Roberts and Department Assistant Director Todd Maxey told Spoon and other employees that the Department's former director, Hal Fowler, had embezzled Department funds.

3. Roberts and Maxey were falsifying the HIV training records of the Department's employees and were denying employees access to their training records.

4. Records detailing the reporting history of Steven Harrison, whose community supervision was being supervised by the Department though he had been placed on community supervision in Collin County, were being shredded before

---

[3]Spoon's status as a public employee is not at issue in this appeal.

4

returning Harrison's file to Collin County due to his "close romantic relationship with the County Judge of Fannin County."

5.  Maxey committed family violence against his wife, but was using a contact at the Department who had a connection with the Office of the Fannin County Justice of the Peace to make sure charges against him were thrown out before they were sent to the district attorney's office.

6.  Blake, who was taking an active role in Young's campaign and the campaigns of other Republicans, told Young "not to bring her mix-raced child to any public campaign events."

Spoon claimed that her termination was a retaliatory effort to silence her whistleblowing and to end any further inquiry into the Department's operations.

The petition set forth the following timeline of relevant events:

- On Friday, June 18, 2010, Spoon met with Glaser[4] to express her concerns about the six possible violations and matters of public concern.

- On that day, Glaser was also concerned about the issues Spoon reported and planned to contact the Texas Rangers to initiate an investigation, but instead met with Blake to discuss Spoon's allegations.

- On Monday, June 21, 2010, Spoon reported to work. Young approached Spoon and asked her if she knew why Glaser and Blake would want to meet with Roberts, who was then on vacation. Spoon responded that she was unsure why such a meeting would have been requested.

- On Tuesday, June 22, 2010, Roberts returned from vacation and met with Blake and Glaser at the courthouse.

- On Wednesday, June 23, 2010, Spoon reported to work. Young advised her that the courthouse meeting had resumed and that Roberts was meeting with the human resources department later that day.

- When Roberts returned from her June 23 meetings, she met with Spoon and told her that she was no longer employed by the Department.

---

[4]Spoon pled that she believed in good faith that Glaser had the authority to investigate the above-referenced matters and to prosecute any violations of the law.

Spoon's petition alleged that Roberts told her to either immediately resign her position or face termination on the ground that she had "gone outside the chain of command." Spoon refused to resign and was immediately terminated. According to Spoon, Roberts instructed her not to speak with Glaser because Glaser was already aware of the decision to terminate her.

**B.  The Department's Plea to the Jurisdiction**

The Department relates a very different version of the events leading to Spoon's termination and contends that its version of the facts conclusively establishes that the Department's sovereign immunity was not waived under the Act. The Department's factual recitation focuses on Spoon's management, in her capacity as a community supervision officer (CSO), of Pamela Sue Garza's community supervision. Garza had been sentenced to a Substance Abuse Felony Punishment Facility (SAFPF). In order to be admitted and receive bed space in a SAFPF, Garza was required to complete SAFPF documents. In her role as CSO, Spoon met with Garza, explained the SAFPF program, and attempted to secure her signature on some of the routine paperwork required of all individuals admitted into the SAFPF program, including a document titled "Consent for the Release of Confidential Information" (the Release). Garza refused to sign the release during her initial visit with Spoon, and Spoon never requested that Garza sign the Release after the initial visit. Instead, Spoon asked Blake and Roberts what to do because she believed that a SAFPF would not accept Garza without the Release. According to Roberts, Spoon said that Garza did not belong in the SAFPF program and that she did not believe a defendant could actually be sentenced to a SAFPF without signing the Release.

6

Blake (1) suggested that the Department contact the director of the SAFPF program to determine whether Garza could be admitted into a SAFPF without a signed Release and, if so, to identify the procedure for securing Garza's admission and (2) informed the Department that she would sign an order relieving Garza from the requirement of an executed Release after the Department obtained the SAFPF program director's recommendation on the appropriate verbiage for such an order. Someone affiliated with the SAFPF program told Roberts that the program had never accepted an individual into a facility without a properly executed release. Garza's SAFPF status hearing was set for June 18, 2010, and Spoon understood that the paperwork to secure her admittance into a SAFPF had to be completed before that hearing. Before she left for vacation, Roberts instructed Spoon at least twice to contact the district attorney's office for assistance in preparing whatever documents were necessary to satisfy Blake and SAFPF program administrators so that Garza could be admitted into the SAFPF without a signed Release.

According to the Department, instead of following Roberts' instruction, Spoon went first to Maxey, and then to Young, and asked them both what to do about the Release. Both told her to draft a proposed order for Blake's signature; however, Roberts had previously explained to Spoon that the Department's employees lacked the expertise to prepare proposed court orders. The Department alleged that, when Spoon met with Glaser, she told him of the conflicting instructions she had received from Roberts, Maxey, and Young. The Department argued that Spoon was generally gossiping about the Department, complaining about having to draft the SAFPF document, and discussing her dissatisfaction with Maxey and Roberts—not reporting any legitimate violations of law. The Department viewed Spoon's communication to Glaser as an

7

inappropriate discussion about internal work matters that should have been handled internally through the proper chain of command, as set forth in the Code of Ethics contained in the Department's administrative (or policy and procedure) manual.

Despite instructions to secure the necessary documents by contacting the district attorney's office, Spoon was unable to provide the court with either the signed Release or the proposed draft order waiving the Release requirement. The Department claimed that, since Roberts assumed leadership of the Department, Spoon is the only CSO who was unable to secure all required SAFPF paperwork prior to the thirty-day status hearing. According to the Department, Roberts considered Spoon's failure inexcusable and terminated her for that reason in addition to her failure to follow the chain of command.

Reciting its version of the facts, the Department's plea to the jurisdiction argued that Spoon did not make a good-faith report of a violation of any law to an appropriate law enforcement authority. Specifically, the Department argued (1) that the petition failed to specify any law allegedly violated by the Department; (2) that, alternatively, Spoon's deposition testimony contradicted the assertions in her petition which could be construed as violations of law and conclusively established that no violation of law was reported to Glaser; and (3) that Spoon could not establish a causal connection between her termination and any alleged good-faith report of a violation of law because the Department established, as a matter of law, that Roberts was not aware of any legitimate report when she decided to terminate Spoon's employment. The Department's plea attacked both the sufficiency of Spoon's pleadings and the existence of jurisdictional facts.

## II. Standard of Review

Whether a trial court has subject-matter jurisdiction is a question of law subject to de novo review. *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex. 2002); *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). "'A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject matter jurisdiction.'" *In re K.M.T.*, 415 S.W.3d 573, 575 (Tex. App.—Texarkana 2013, no pet.) (quoting *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004)). A plea to the jurisdiction can be used to challenge the plaintiff's pleadings, the existence of jurisdictional facts to support the pleadings, or both.

In reviewing a trial court's ruling on a plea to the jurisdiction, we first look to the pleadings to determine if jurisdiction is proper. *City of Waco v. Kirwan*, 298 S.W.3d 618, 621 (Tex. 2009). "A plaintiff has the burden of pleading facts which affirmatively demonstrate the trial court's jurisdiction." *Salazar v. Wilson*, No. 08-13-00171-CV, 2014 Tex. App. LEXIS 5175, at *5 (Tex. App.—El Paso May 14, 2014, no pet. h.) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004)). When a plea to the jurisdiction challenges the pleadings, we look to the pleader's intent, construe the pleadings liberally in favor of jurisdiction, and accept the allegations in the pleadings as true to determine if the pleader has alleged sufficient facts to affirmatively demonstrate the trial court's jurisdiction to hear the case. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012). If the pleadings affirmatively negate the existence of jurisdiction, then a trial court may grant a plea to the jurisdiction without allowing the plaintiff an opportunity to amend. *Miranda*, 133 S.W.3d at 227.

9

If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence on that issue even where those facts may implicate the merits of the cause of action. *Kirwan*, 298 S.W.3d at 622. In this context, the trial court's review "mirrors that of a traditional summary judgment motion." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012). "Initially, the defendant carries the burden to meet the summary judgment proof standard for its assertion that the trial court lacks jurisdiction." *Id.* "If it does, the plaintiff is then required to show that a disputed material fact exists regarding the jurisdictional issue." *Id.* If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the plea to the jurisdiction is determined as a matter of law. *Id.*; *Kirwan*, 298 S.W.3d at 622 ("A plea should not be granted if a fact issue is presented as to the court's jurisdiction, but if the relevant undisputed evidence negates jurisdiction, then the plea to the jurisdiction must be granted."). In considering this evidence, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Kirwan*, 298 S.W.3d at 622; *see Tex. Dep't of Transp. v. Ingram*, 412 S.W.3d 129, 134 (Tex. App.—Texarkana 2013, no pet.).

Section 554.0035 of the Texas Government Code provides the following waiver of immunity:

> A public employee who alleges a violation of this chapter may sue the employing state or local governmental entity for the relief provided by this chapter. Sovereign immunity is waived and abolished to the extent of liability for the relief allowed under this chapter for a violation of this chapter.

TEX. GOV'T CODE ANN. § 554.0035. Because the plaintiff must demonstrate that she is alleging a violation of the Whistleblower Act before sovereign immunity is waived, the Texas Supreme

Court has specified that the prima facie elements of a Section 554.002 violation must be included in the plea to the jurisdiction analysis. *Mission*, 372 S.W.3d at 635–36; *Lucek*, 290 S.W.3d at 884 ("[T]he section 554.002(a) elements must be included within the pleadings so that the court can determine whether they sufficiently allege a violation under the Act to fall within the section 554.0035 waiver [of sovereign immunity]."). Therefore, Spoon was required to allege in her pleadings facts establishing (1) that she was a public employee (2) with a good-faith belief that she was reporting a violation of the law as defined by Section 554.001, (3) that the report was made in good faith to an appropriate law enforcement authority, and (4) that her employment was terminated.[5] *See* TEX. GOV'T CODE ANN. § 554.002(a). If the termination occurred, as it did here, not later than the "90th day after the date on which the employee reported a violation of law, the suspension, termination, or adverse personnel action is presumed, subject to rebuttal, to be because the employee made the report." TEX. GOV'T CODE ANN. § 554.004.

> However,
>
> [w]hile a plaintiff must plead the elements of her statutory cause of action—here the basic facts that make up the prima facie case—so that the court can determine whether she has sufficiently alleged a [statutory] violation, she will only be required to submit evidence if the defendant presents evidence negating one of those basic facts. And even then, the plaintiff's burden of proof with respect to those jurisdictional facts must not "involve a significant inquiry into the substance of the claims." Cases may exist where the trial court decides, in the exercise of its broad discretion over these matters, that the inquiry is reaching too far into the substance of the claims and should therefore await a fuller development of the merits.

*Mission*, 372 S.W.3d at 637–38 (citations omitted).

---

[5]It is undisputed that Spoon was a public employee, that the Department is a governmental entity, and that Spoon's employment with the Department was terminated.

11

**III.    The Plea to the Jurisdiction Was Properly Denied**

**A.    Spoon's Petition Was Sufficient to Confer Jurisdiction**

Spoon's petition alleged, *inter alia*, (1) that Young, was campaigning for the position of Fannin County Tax Assessor and using the "Department's equipment, including . . . computers, and internet resources[,] to promote her campaign during the Department's normal business hours" and (2) that "Roberts and Maxey told employees that the Department's former director, Hal Fowler, had embezzled Department funds." The petition stated (1) that Spoon reported these activities to Glaser, (2) that she believed in good faith that she was reporting illegal activity, and (3) that the reports were made to the appropriate law enforcement authority. We are to take Spoon's pleadings as true when evaluating the Department's challenge to the pleadings.

The Department argues that Spoon's petition fails to identify the violation of law allegedly reported by Spoon. However, as long as a whistleblower plaintiff sets forth sufficient facts to establish that she was a public employee who in good faith, reported a violation of law by the City or another public employee to an appropriate law enforcement authority, she is not required to identify in her petition the exact statute she reported as having been violated. *See Wilson v. Dallas Indep. Sch. Dist.*, 376 S.W.3d 319, 327 (Tex. App.—Dallas 2012, no pet.); *City of Elsa v. Gonzalez*, 325 S.W.3d 622, 625 (Tex. 2010).

The Department also argues that Spoon's petition affirmatively negated her Whistleblower claims because "the evidence construed in Spoon's favor shows that Spoon failed to satisfy all elements of her statutory claims." This argument, based on the evidence presented by the parties during their limited jurisdictional discovery in this case, challenges the existence

of jurisdictional facts rather than the pleadings. The Department points to *Miranda*, which states, "If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction, but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend." *Miranda*, 133 S.W.3d at 226–27. We find nothing in Spoon's pleadings that affirmatively negates the trial court's jurisdiction and conclude that the pleadings, when construed liberally in favor of jurisdiction, touch on each element of a Section 554.002 whistleblower claim. Thus, we address the crux of the Department's plea—the existence of jurisdictional facts.

### B.      Good Faith Belief of a Violation of the Law

The Department carried the initial burden to show that the evidence negated the existence of jurisdictional facts. *See Mission*, 372 S.W.3d 629. The Department argued that the limited jurisdictional discovery established that no violation of law was reported to Glaser in good faith. We disagree, finding that Spoon raised material fact issues as to whether she reported a violation of law to Glaser in good faith.

#### 1.      Evidence of Report of Illegal Campaigning

The Department contends that the campaigning acts allegedly committed by Young either did not constitute illegal campaigning or were shown to have never been committed. The Department further argues that, while Spoon alleged that Young was using the Department's paper, envelopes, and stamps during her campaign, her testimony did not conclusively establish these allegations. Spoon testified that Young's campaign literature was brown and turquoise and

13

that she did not recall whether the Department's paper and envelopes were pre-printed with the Department's name and address. Spoon also testified that mail in the Department was taken to a central location "where it ran through a postage machine and [was] mailed." Citing to Roberts' affidavit, the Department claims Spoon's report was not made in good faith because Spoon knew or should have known that Young could not have used (1) the Department's printer because it does not print in color, (2) the Department's stamps because the Department has no stamps, and (3) the Department's envelopes because the envelopes are preprinted with the Department letterhead. Neither Spoon's testimony nor Roberts' affidavit negates Spoon's allegations because the Department's printers could have been used to print on colored paper, and postage could have been placed on the campaign literature using the postage machine.[6] Additionally, we find that Spoon presented evidence raising fact issues with respect to other aspects of alleged illegal campaigning.

When Roberts was deposed, she testified that she forbade Young to campaign in the office. Roberts also testified that Spoon would have reported a violation of law if she mentioned to Glaser that Young was campaigning in the office. According to Glaser's deposition testimony, Spoon mentioned that Young was running for public office while she was still employed with the Department. Glaser "assume[d] that [Spoon] thought that . . . [Young] should have resigned to run." He told Spoon that Young's campaign was not unlawful merely due to her continued employment. Glaser testified that Spoon offered no further details about the

---

[6]Again, the plaintiff is only required to submit evidence if the defendant first meets its burden by presenting evidence negating one of the plaintiff's claims. *Mission*, 372 S.W.3d at 637.

campaign and that he would have considered campaigning on government time or using county equipment to be a violation of law had Spoon raised these issues.

Contrary to Glaser's assertions, Spoon testified, "Everything that I put in my petition that was illegal activity I reported to Glaser." Specifically, Spoon stated that she informed Glaser of "the illegal campaigning" and that Glaser told her "that he was going to get the Texas Rangers to investigate the department." She specified,

> [I] [t]old him that [Young] had been campaigning illegally in the office. That she was passing out koozies in the office in our mail slots, they were sitting on our desks as decorations I suppose, or campaigning. I said that her purse was being used as a campaign poster. That she was driving up to the probation department with a campaign sign on it while on the county property.[7]

Spoon further testified that Young ordered a purse that displayed her campaign sign and campaign buttons while using the front office computer during normal business hours. She indicated that Young was using Facebook while at work and that Young's Facebook photograph was a photograph of her campaign sign. Spoon also testified that the purse was displayed at the Department's front desk, the central check-in point for individuals on community supervision. Spoon stated, "I couldn't believe it with my own eyes that she was using county computers or having her staff use county computers during work hours with her logo. I couldn't believe how displayed it was." She testified that she reported these activities—which she believed were violations of law—to Glaser.

---

[7]The Department did not negate Spoon's allegation in the pleadings that Young was campaigning on government time. The Department presented no evidence that Young did not place campaign koozies in employee mail slots on government time.

15

Blake's deposition testimony does not divulge specific details about what Glaser claimed Spoon said to him regarding the campaign. However, Blake testified, "What I vividly recall is my concern that any time anybody is running for office and works for a governmental entity, that they not campaign on county time . . . . I just remember that I was very vigilant personally about wanting to make sure that there wasn't any campaigning on county time because that's inappropriate." Viewed in a light most favorable to Spoon, Blake's testimony supports Spoon's claim that she told Glaser about campaigning on government time.

In light of this testimony, we now address whether Spoon reported a violation of law in good faith. In the context of a whistleblower claim, good faith has both objective and subjective elements. *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Gentilello*, 398 S.W.3d 680, 683 (Tex. 2013). Spoon's petition stated that she met with Glaser in good faith to discuss specific, enumerated acts which she believed "were not only illegal but were matters of public concern." Spoon also testified, "Everything that I put in my petition that was illegal activity I reported to Glaser." Thus, Spoon's petition and testimony established the subjective prong of the good-faith requirement.

However, the objective good-faith prong "turns on more than an employee's *personal* belief, however strongly felt or sincerely held." *Id.* A whistleblower plaintiff must show that her belief that a law was violated was reasonably based on her training and experience. *See Univ. of Houston v. Barth*, 403 S.W.3d 851, 856–57 (Tex. 2013) (citing *Gonzalez*, 325 S.W.3d at 626). Spoon's many years of experience as a CSO is considered in the analysis of whether she reported a violation of law in good faith. As a CSO, Spoon was aware of Department policies. Roberts

16

testified that she banned Young from campaigning in the office. Roberts, Glaser, and Blake all believed that it was a violation of law to campaign on government time. Because Spoon's boss, the district attorney, and the district judge all believed it would be inappropriate for Young to campaign in the office on government time and because Spoon testified that she reported such a complaint to Glaser, Spoon demonstrated objective good faith in making the report.

Next, the Department relies heavily on the fact that Spoon's counsel has refused to identify any law allegedly implicated by Spoon's reports, despite numerous opportunities to do so. "The Whistleblower Act defines 'law' as a state or federal statute, an ordinance of a local governmental entity, or 'a rule adopted under a statute or ordinance.'" *Barth*, 403 S.W.3d 851, 854 (quoting TEX. GOV'T CODE ANN. § 554.001(1)). Because the Act is remedial in nature, it should be liberally construed to effect its purpose. *Town of Flower Mound v. Teague*, 111 S.W.3d 742, 752 (Tex. App.—Fort Worth 2003, pet. denied) (citing *Castaneda v. Tex. Dep't of Agric.*, 831 S.W.2d 501, 503 (Tex. App.—Corpus Christi 1992, writ denied), *superseded by statute on other grounds*, Act of May 25, 1995, 74th Leg., R.S., ch. 72, 1995 Tex. Gen. Laws 3812. An employee is protected by the Act if she believes and reports in good faith that a violation has occurred, even where she is wrong about the legal effects of the facts (i.e., there was no actual violation of law in fact). *Llanes v. Corpus Christi Indep. Sch. Dist.*, 64 S.W.3d 638, 642 (Tex. App.—Corpus Christi 2001, pet. denied); *Lastor v. City of Hearne*, 810 S.W.2d 742, 743–44 (Tex. App.—Waco 1991, writ denied). Also, an employee need not identify the law allegedly violated when making the report. But there "must be some law prohibiting the complained of conduct to give rise to a Whistleblower claim." *Llanes*, 64 S.W.3d at 642. The

17

conduct reported by the employee must implicate some law for the employee to be protected by the Act. *Id.* "Otherwise, every complaint, grievance, and misbehavior could support a claim under the Act. Thus, to recover under the Act, an employee must have a good-faith belief that a law, which in fact exists, was violated." *Id.* at 643.

In the face of a plea to the jurisdiction, a trial court must have before it the facts and arguments that would assist it in evaluating whether it has subject-matter jurisdiction. While an employee is not required to identify in her petition the statute, ordinance, or rule that was allegedly violated, "at some point during the litigation, the employee-plaintiff must make that identification." *Wilson*, 376 S.W.3d at 327 (holding that plaintiff-appellant challenging dismissal of whistleblower claim for failure to report violation of law must identify in trial court law allegedly violated to preserve argument for appeal). In response to the Department's numerous requests that Spoon identify the law allegedly violated, Spoon simply responded that identification of the law allegedly violated is not required. However, "the specific law violated is critical to the determination of whether the report was made to appropriate authority." *See Mullins v. Dallas Indep. Sch. Dist.*, 357 S.W.3d 182, 188–89 (Tex. App.—Dallas 2012, pet. denied).[8] Thus, Spoon should have responded and identified the law or laws she believed were violated by the conduct described in her report. *Id.* at 189.

However, (1) because the trial court denied the plea to the jurisdiction, thereby implicitly concluding that an existing law was implicated, (2) because we have found no other case in

---

[8]The appellate court in *Mullins* noted that Mullins identified alleged violations of law during the appellate proceedings, thereby enabling the court to analyze whether Mullins' reports implicated violations of the law and whether the reports were made in good faith to the appropriate law enforcement authority. *Mullins*, 357 S.W.3d at 188–89. Here, Spoon's counsel failed to even identify any alleged violation of law on appeal.

which counsel has failed to identify the law allegedly violated by the conduct described in the report, and (3) because all of the witnesses, including the district attorney and district judge, testified that it was illegal to campaign for office on government time, we will undertake to determine if a law exists prohibiting the conduct Spoon complained of.

Believing that Spoon's allegations might stem from violations of the Department's internal policies, the Department correctly argues that a violation of a department's internal policies does not always constitute a violation of the law. *See Harris Cnty. Precinct Four Constable Dep't v. Grabowski*, 922 S.W.2d 954, 956 (Tex 1996); *see Barth*, 403 S.W.3d at 856; *Ruiz v. City of San Antonio*, 966 S.W.2d 128, 130 (Tex. App.—Austin 1998, no pet.); *Burnet County Sheriff's Dep't v. Carlisle*, No. 03-00-00398-CV, 2001 WL 23204, at *6 (Tex. App.—Austin Jan. 11, 2011, no pet.) (not designated for publication). However, a rule adopted under a statute or ordinance or an ordinance of a local governmental entity constitutes a law under the Act, and we find that Spoon's report implicated such a rule. *See* TEX. GOV'T CODE. ANN. § 554.001(1).

As applicable to this case, Section 76.002(a) of the Texas Government Code gives the district judges within each judicial district the authority to establish a community supervision and corrections department. TEX. GOV'T CODE ANN. § 76.002(a) (West 2013).[9] "The judicial

---

[9]Employees of the Department are not state employees, except for purposes of worker's compensation under Chapter 501 of the Texas Labor Code and indemnification provisions and provisions providing defense by the Attorney General under Chapter 104 of the Texas Civil Practice and Remedies Code. TEX. GOV'T CODE ANN. § 76.006(c) (West 2013).

districts served by a department shall pay the salaries of department employees." TEX. GOV'T CODE ANN. § 76.006(b) (West 2013).[10] Section 76.006(a) reads,

> The department shall contract for all employee benefits with one county served by the department and designated for that purpose by the judges described by Section 76.002. To the extent that employee benefits are provided by a county under this subsection, the employees are governed by personnel policies and benefits equal to personnel policies for and benefits of other employees of that county.

TEX. GOV'T CODE. ANN. § 76.006(a).

For purposes of our analysis, Spoon is governed by Fannin County's personnel policies and procedures. Section 158.009 of the Texas Local Government Code allows a commissioner's court to "adopt, publish, and enforce rules regarding: . . . matters relating to the selection of county employees and their procedural and substantive rights, advancement, benefits, and working conditions of county employees." TEX. LOCAL GOV'T CODE ANN. § 158.009 (West 2008). On April 24, 2000, the Commissioner's Court of Fannin County adopted Section 3.09 of the Fannin County Personnel Policy Manual (the Manual), which has been in effect since that time. Section 3.09, titled "Policy on Political Activity," states,

> County employees shall not: . . .
>
> b.      Directly or indirectly coerce, attempt to coerce,  command, or advise another person to pay, lend, or  contribute anything of value to a party, committee,  organization, agency, or person for a political reason; or
>
> c.      Use any equipment, property or material owned by the County for political activity or engage in political activity while on duty for the County.

FANNIN COUNTY PERSONNEL POLICY MANUAL § 3.09 (2000), *available at* http://tools.cira. state.tx.us/users/0045/docs/Treasurer/Current_Fannin_County_Personnel_Manual_2-3-14.pdf

---

[10]The Department serves only Fannin County.

(last visited July 15, 2014). Therefore, Section 3.09 of the Manual constitutes a law within the meaning of the Act. *See discussion in City of Waco v. Lopez*, 183 S.W.3d 825, 829 (Tex. App.—Waco 2005), *overruled by* 259 S.W.3d 147 (Tex. 2008).

## 2. Evidence of Report of Embezzlement

Moreover, Spoon introduced evidence establishing that she reported possible embezzlement by another public employee. According to Spoon, the issue of embezzlement of Department funds by the former Department director, Fowler, was a regular topic of discussion by Roberts, Maxey, and Department employees Lisa Ayers and Corey Baker. Glaser and Blake testified that the issue of embezzlement was not mentioned. However, Spoon testified,

> I told [Glaser] that [Maxey] had said that Hal Fowler had embezzled money when he left and that was the reason for the budget problems in the probation department. And that [Roberts] was going to tell Judge Blake about the embezzlement. And when she told us at the office that—when she learned at the barbecue cook-off that Judge Blake and Hal Fowler went to the same church, that she decided not to tell Judge Blake about Hal's embezzling money. I did not believe that Hal embezzled money, that I couldn't understand why the budget problems that possible [Maxey] needed to be looked at about his budgeting issue. It might be him and not Hal Fowler.

Section 554.002(a) of the Act protects a public employee "who in good faith reports a violation of law by . . . another public employee." TEX. GOV'T CODE. ANN. § 554.002(a). Fowler was a public employee prior to his retirement. Spoon was alleging that Roberts believed Fowler had embezzled money but secreted the fact. Clearly, embezzlement of the Department's funds implicates the Texas Penal Code's theft statute. *See* TEX. PENAL CODE ANN. § 31.02 (West 2011). The Department argues that Spoon's report was not made in good faith because (1) it was based solely on rumors, and (2) Spoon's testimony that she did not believe Fowler

21

embezzled money established that Spoon lacked a subjective good-faith belief when making the report.[11]

Spoon testified that it was common knowledge that Fowler embezzled funds and that people around the office discussed the matter openly. Whistleblower actions can be based on this type of first-hand hearsay. *Tex. Dep't of Criminal Justice v. McElyea*, 239 S.W.3d 842, 853 (Tex. App.—Austin 2007, pet. denied) ("it is permissible for a whistleblower's knowledge about violations of law to be based on hearsay") (citing *Castaneda*, 831 S.W.2d at 504 (lack of personal knowledge does not conclusively negate subjective good faith)). Although Spoon testified that she did not personally believe Fowler had embezzled funds, she indicated that people in the office said that funds had been embezzled, suggested that perhaps Maxey was involved, and felt the matter serious enough to report to Glaser.

Based on the evidence presented, which we view in a light most favorable to Spoon, we conclude that Spoon raised fact issues as to whether she reported violations of law to Glaser in good faith.[12] Accordingly, we overrule this point of error.[13]

---

[11]Spoon testified,

> [Maxey] said that [Fowler] took an enormous amount of money when he left of time, like vacations and sick leaves and all that . . . . But evidently he got a large check . . . for vacation and sick leave that he had already taken. Actually taken in the physical sense but he got a financial -- paid for it again for the second time. And that was a large check.

The Department argues that Spoon's testimony establishes that she did not have a good-faith objective belief that embezzlement occurred because (1) the act Spoon described in her testimony does not amount to embezzlement, and (2) no one in Spoon's position would believe that Fowler's acts constituted embezzlement. However, when we view the evidence in the light most favorable to Spoon, it appears that she testified that, according to Maxey, Fowler was paid for vacation and sick leave twice and that he was not entitled to the second payment.

[12] The Texas Government Code states,

22

## C.    Evidence of Causal Connection

The Department argues that Spoon failed to show a causal link between her report and Roberts' decision to terminate her.  To show causation, "a public employee must demonstrate that after he reported a violation of the law in good faith to an appropriate law enforcement authority, the employee suffered discriminatory conduct by his employer that would not have occurred when it did if the employee had not reported the illegal conduct."  *City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 67 (Tex. 2000) (citing *Tex. Dep't of Human Servs. v. Hinds*, 904 S.W.2d 629, 633 (Tex. 1995)); *see Steele v. City of Southlake*, 370 S.W.3d 105, 117 (Tex. App.—Fort

---

> [A] report is made to an appropriate law enforcement authority if the authority is a part of a state or local governmental entity or of the federal government that the employee in good faith believes is authorized to:
>
> (1)    regulate under or enforce the law alleged to be violated in the report; or
>
> (2)    investigate or prosecute a violation of criminal law.

TEX. GOV'T CODE ANN. § 554.002(b).  In this context, good faith means,

> (1)    the employee believed the governmental entity was authorized to (a) regulate under or enforce the law alleged to be violated in the report, or (b) investigate or prosecute a violation of criminal law; and
>
> (2)    *the employee's belief was reasonable in light of the employee's training and experience.*

*Id.* (citing *Tex. Dep't of Trans. v. Needham*, 82 S.W.3d 314, 321 (Tex. 2002).  The Department concedes that Glaser was the appropriate law enforcement authority with respect to the illegal campaigning and embezzlement allegations.

[13]The Department's prayer for relief on appeal states,

> Alternatively, for the sake of judicial economy so that legally-insufficient claims are not left to be re-evaluated by this Court again on appeal after trial or after another plea is filed to narrow the issues for trial, Appellant asks this Court to reverse and order dismissal of each and every claim that fails to establish all elements of a violation of the Texas Whistleblower Act and concerning which the district court therefore lacks jurisdiction to consider.

The Department cites no authority which would support their entitlement to this requested relief.  The parties in this case conducted limited jurisdictional discovery.  It appears that depositions of key witnesses were timed.  In essence, the Department seeks summary judgment based on this limited discovery.  We need not entertain the Department's request at this stage in the litigation.

23

Worth 2012, pet denied). A causal connection can be proven by circumstantial evidence. *Zimlich*, 29 S.W.3d at 69.

Here, Spoon met with Glaser, Glaser immediately discussed that meeting with Blake, Blake met with Roberts on the first day that Roberts returned from vacation, and Spoon was fired one day after Roberts' meeting with Blake. Roberts testified that her decision to terminate Spoon was based, in part, on what Blake told her. When viewed in the light most favorable to Spoon, there is sufficient circumstantial evidence to show a causal link between her report and her termination. Furthermore, because Spoon was terminated within days of her reports to Glaser, there is a rebuttable presumption that her termination occurred as a result of the report. *See* TEX. GOV'T CODE ANN. § 554.004(a).

> Next, Section 554.004 of the Texas Whistleblower Act provides,
>
> It is an affirmative defense to a suit under this chapter that the employing state or local governmental entity would have taken the action against the employee that forms the basis of the suit based solely on information, observation, or evidence that is not related to the fact that the employee made a report protected under this chapter of a violation of law.

TEX. GOV'T CODE ANN. § 554.004(b). The Department argues that undisputed evidence conclusively established its affirmative defense that Roberts did not know of Spoon's report to Glaser and that Spoon was terminated for reasons other than her report.

The Department relies primarily on Roberts' deposition testimony that Spoon was fired (1) for failure to follow her direct order regarding the Garza SAFPF order and (2) for failure to follow the chain of command by first bringing complaints about the Department and internal gossip to the attention of the district attorney. The Department's assertions were not

24

conclusively established by the record. While Roberts testified that she told Spoon several times to talk with the district attorney about the order (which Spoon eventually did), Spoon testified that it was her idea to go to the district attorney's office. Spoon also testified that she needed clarification about what to do with the order because Maxey told her to draft the order while Roberts told her not to do so. Also, we have found that Spoon reported what she believed were violations of law to Glaser, and Roberts testified that Department employees are not required to go through the chain of command when reporting violations of law.

The Department also contends that it is undisputed that Roberts was the sole decision maker, Roberts did not consult with Glaser or Blake before deciding to terminate Spoon, and Roberts had no knowledge of the substance of Spoon's report to Glaser at the time she decided to terminate Spoon. However, (1) Spoon testified she reported all of the six enumerated complaints in her petition—including violations of law—to Glaser, (2) Glaser discussed the Spoon meeting with Blake, (3) Blake's affidavit suggests that illegal campaigning was mentioned to her by Glaser, (4) Roberts met with Blake, (5) Roberts testified that the decision to terminate Spoon came after her meeting with Blake, (6) Roberts said her decision was, in part, based on the conversation she had with Blake, and (7) Spoon testified that Roberts told her there was no further need to contact Glaser because Glaser was already aware of Roberts' decision to terminate her employment. This evidence allows for a multitude of inferences, many of which are contradictory, to be drawn. As a result, the reason for Spoon's termination and Roberts' knowledge of Spoon's report to Glaser are disputed issues of material fact. The Department has failed to meet its burden of conclusively negating the element of causation.

25

Viewed in the light most favorable to Spoon, the evidence does not, in our view, (1) negate the jurisdictional facts demonstrating Spoon's prima facie case under the Act or (2) conclusively establish the Department's affirmative defense. Rather, we find that the evidence raises fact issues as to whether Spoon was terminated for making a good-faith report to Glaser of a violation of the law. Accordingly, the Department's plea to the jurisdiction was properly denied.

## IV. Conclusion

The judgment of the trial court is affirmed.


Jack Carter
Justice


Date Submitted:     June 3, 2014
Date Decided:       July 16, 2014